NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1997-17T1

ISAIAH CARDINALE,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

APPROVED FOR PUBLICATION

March 1, 2019

APPELLATE DIVISION

Argued February 4, 2019 – Decided March 1, 2019

Before Judges Messano, Fasciale and Gooden Brown.

On appeal from the Board of Trustees, Police and Firemen's Retirement System, PFRS No. 3-98613.

Steven J. Kossup argued the cause for appellant (Feeley & LaRocca, LLC, and Steven J. Kossup, attorneys; John D. Feeley, of counsel and on the brief).

Robert E. Kelly, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Robert E. Kelly, on the brief).

The opinion of the court was delivered by

FASCIALE, J.A.D.

This appeal requires us to decide whether, as a matter of law, a police officer is ineligible for ordinary disability benefits as a member of the Police & Firemen's Retirement System (PFRS) if the officer separates from service by irrevocably resigning from employment to resolve pending drug-related disciplinary charges. We answer this question recognizing that N.J.S.A. 43:16A-8(2) requires disability retirees to return to duty once their disability has "vanished or has materially diminished." Of course, permanently resigning from employment makes returning to duty impossible.

Isaiah Cardinale (Cardinale) – the officer who resigned from the police department (the Police Department) – argues that the Board of Trustees (the Board) of PFRS acted arbitrarily by refusing to process his application seeking ordinary disability benefits. He maintains that the Board's declaration that he was ineligible misapplies N.J.S.A. 43:16A-8(2), and its refusal to consider his application amounts to a failure to turn square corners. Cardinale urges us to direct the Board to consider his application on the merits.

We hold that when a PFRS member – here a police officer – voluntarily irrevocably resigns from active service, such a separation from employment automatically renders the individual ineligible for ordinary disability benefits.

Generally, for individuals whose disability has vanished or materially diminished, benefits cease when the retiree refuses to return to duty after the Board has so ordered. In this sense, disability retirees are unique. But here, Cardinale can never return to duty solely because of his final resignation, rather than his refusal to do so upon disability rehabilitation. Under the governing legislative framework, the inability to return to duty – due solely to an irrevocable resignation – prevents the Board from statutorily terminating any granted benefits, a result which would contravene important public policy underlying disability retirement benefits.

We therefore affirm.

## I.

In August 2004, Cardinale began working as a police officer. On December 16, 2013, he submitted to a random drug test. Two days later, Cardinale admitted to using cocaine. The Police Department immediately suspended him pending the results of the test, and Cardinale successfully completed drug and alcohol treatment in Florida. In February 2014, the toxicology report demonstrated that he had tested positive for cocaine.

On February 21, 2014, the Police Department issued a Preliminary Notice of Disciplinary Action (PNDA). Before that, Cardinale had performed his job without any documented problems. The PNDA charged him with

violating the following sections of N.J.A.C. 4A:2-2.3(a) and the Police Department's rules and regulations:

> N.J.A.C. 4A:2-2.3(a):
> 1. Incompetency, inefficiency or failure to perform duties;
> 3. Inability to perform duties;
> 6. Conduct unbecoming a public employee;
> 7. Neglect of duty; [and]
> 1[2]. Other sufficient [c]ause.
>
> . . . Department Rules & Regulations:
> Oath of Office;
> 1:5 Code of Ethics;
> 2:24 Employee Drug Testing;
> 3:1.1 Standards of Conduct;
> 3:1.11 Obedience to Laws and Regulations;
> 3:2.2 Alcoholic Beverages and Drugs; [and]
> 5:1.1 Disciplinary Action.

Eleven days later, on March 4, 2014, while on suspension, Cardinale applied for ordinary disability benefits. In August 2014 – after a hearing officer conducted a disciplinary hearing – the Police Department issued its Final Notice of Disciplinary Action (FNDA) and removed him as a police officer effective February 21, 2014. Cardinale appealed the FNDA (the disciplinary action) to the Civil Service Commission (the Commission), which transmitted the matter to the Office of Administrative Law (OAL) as a contested case.

In February 2015, Cardinale and the Police Department settled the disciplinary action and entered into a settlement agreement. The Police

Department withdrew the FNDA's recommended termination, Cardinale withdrew his appeal from the FNDA, and Cardinale signed a letter irrevocably resigning from the Police Department. The letter stated, "Effective June 15, 2015, I am voluntarily separating from my employment as a [p]olice [o]fficer with the [Police Department and] I understand that this letter of separation from employment is not revocable." In the settlement agreement, Cardinale acknowledged that he would proceed with his application for ordinary disability benefits at his "sole risk," and that the outcome of the application would not affect his resignation. In March 2015, the disciplinary action was terminated.

In November 2015, the Board declined to process Cardinale's application. The Board explained that the only obstacle to his reemployment was not the purported disability, but rather, his irrevocable resignation. The Board therefore concluded – assuming Cardinale was disabled but later became rehabilitated – that it would have no statutory authority to stop paying benefits. In February 2016, Cardinale administratively appealed the Board's refusal to process his application, and the OAL listed the matter as a contested case (the benefits action).

In March 2017, an administrative law judge (ALJ) conducted a hearing in the benefits action. Cardinale, the only witness who appeared at the

5

hearing, testified that performing his job as a police officer caused post-traumatic stress disorder (PTSD).  He alleged that the PTSD led him to drink alcohol and use cocaine.  Notwithstanding that allegation, the record reflects no prior disciplinary problems or disruptions in his ability to do his job before he tested positive for cocaine.

At the hearing, Cardinale conceded that he was recovering and no longer disabled.  Indeed, in his application for ordinary disability benefits, which he had filed three years before the hearing, Cardinale admitted that he was "sober" and that his main concern was that due to his duties as a police officer, he would "again become depressed to the point of using alcohol and/or drugs." On direct examination, he gave the following testimony:

> Q: And what was the reason for your leaving the [Police] [D]epartment?
>
> A: My disability.
>
> Q: [W]hat was your disability?
>
> A: PTSD. . . .
>
> Q: And . . . did you have a substance abuse problem?
>
> A: Yes.
>
> Q: And did that include alcohol?
>
> A: Yes.
>
> Q: And you still have that disability?

6

A: No.

Cardinale added that he was not drinking alcohol "right now," and that he was in recovery and taking medication.

The ALJ determined that the settlement agreement did not bind the Board. He found "Cardinale's separation from the . . . Police Department was due solely to the exchange of the parties' respective rights arising out of [the] disciplinary charges." That said, the ALJ concluded that there was no disability issue for the Board to consider. The ALJ noted that Cardinale agreed to proceed with his application for ordinary disability benefits at his sole risk. The ALJ stated further that the Board, which was not a party to the settlement agreement, was under no obligation to process the application, especially because in the ALJ's opinion, the Board was not legally required to do so.

The ALJ explained that N.J.S.A. 43:16A-8(2) requires an employer to reinstate a member who returns from disability status, but that here, Cardinale's execution of his irrevocable letter of resignation made any such return impossible. He elaborated further that because Cardinale could not return to work at the Police Department, the Board would statutorily be unable to stop paying benefits, assuming such benefits were appropriate in the first place. He said:

> The PFRS Board was of the opinion that . . . it should not put itself into a position where, by considering and perhaps granting disability benefits, it would run the risk of never being able to stop the payment of said benefits . . . when Cardinale['s] . . . disability vanishes or materially diminishes . . . . [T]he Board may properly decline to process an application on the grounds that the cessation of employment arose solely out of disciplinary charges and was not based on an issue of disability.

In the final agency decision under review, the Board adopted the ALJ's findings and conclusions.

On appeal, Cardinale contends that the Board's refusal to process his application for ordinary disability benefits deprived him of the opportunity to show he suffered from a disability. He argues therefore that the Board acted arbitrarily and failed to turn square corners. Emphasizing the remedial nature of pension statutes, which he maintains the Board must liberally construe, Cardinale asserts that the Board misinterpreted N.J.S.A. 43:16A-8(2). He argues essentially that the statute gives the Board discretion to discontinue any payment of disability benefits, even if his irrevocable resignation solely prevents him from returning to duty.

## II.

Pertinent to our standard of review, it is undisputed that Cardinale signed the settlement agreement to resolve the disciplinary action. The agreement does not mention Cardinale's alleged PTSD-addiction disability,

which has since vanished or materially diminished. Rather, the Police Department dropped the disciplinary charges in exchange for Cardinale irrevocably resigning, and for no other reason.

Our review of the Board's decision is very limited. Caminiti v. Bd. of Trs., Police & Firemen's Ret. Sys., 394 N.J. Super. 478, 480 (App. Div. 2007). Generally, we may overturn the decision if it is unsupported by sufficient credible evidence in the record, but such an inquiry is unnecessary because the facts are undisputed. We focus instead on the legal question of whether Cardinale is ineligible to seek ordinary disability benefits as a matter of law due to his irrevocable resignation.

We are not bound by an agency's interpretation of a statute or its determination of a strictly legal issue. We review such questions de novo. See Ardan v. Bd. of Review, 231 N.J. 589, 604 (2018); see also Mount v. Bd. of Trs., 233 N.J. 402, 418-19 (2018). In arriving at its decision not to process the application for ordinary disability benefits, the Board interpreted N.J.S.A. 43:16A-8(2). Ordinarily, we defer to an agency's interpretation of a statute unless it is "plainly unreasonable," contrary to the statutory language, or "subversive of the Legislature's intent." N.J. Tpk. Auth. v. AFSCME, Council 73, 150 N.J. 331, 352 (1997); see also Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg'l High Sch. Dist., 199 N.J. 14, 24 (2009) (stating that

"interpretations of the statute and cognate enactments by agencies empowered to enforce them are given substantial deference in the context of statutory interpretation").

## III.

For purposes of our analysis, we assume Cardinale suffered from PTSD, which allegedly resulted in a substance abuse problem. We further accept, as we analyze the issues presented, that he would have satisfied the requirements of N.J.S.A. 43:16A-6(1), which provides in pertinent part that a member may retire on ordinary disability benefits provided

> that the medical board, after a medical examination of such member, shall certify that such member is mentally or physically incapacitated for the performance of his usual duty and of any other available duty in the department which his employer is willing to assign to him and that such incapacity is likely to be permanent and to such an extent that he should be retired.

Of course, we make these assumptions fully understanding that they are completely unsupported in the record by any medical or other credible evidence whatsoever.

Nevertheless, we assume the disability existed because it is irrelevant to our holding that his irrevocable resignation made him ineligible for benefits in the first place. We acknowledge the longstanding principle that "eligibility for disability retirement benefits requires members to make a prima facie showing

10

that they cannot work due to a disability." In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. 386, 394 (App. Div. 2018) (addressing the 2016 re-adoption of amended regulations after Cardinale's application, but acknowledging the principle that eligibility for benefits depends on a prima facie showing of an inability to work due to a disability). But even if he was disabled – as a matter of law – the consequence of his irrevocable resignation is determinative.

That brings us to the heart of the case. The premise of our assumption – that Cardinale would have preliminarily qualified for ordinary disability benefits because he suffered from his alleged PTSD-addiction disability – begs the question of whether his irrevocable resignation from active service as a police officer to settle his drug-related disciplinary charges nevertheless made him legally ineligible. For decades, PFRS disabled retirees were uniquely required to return to active service when their disability had abated. Id. at 400-01.

> If the retired employee regains the ability to perform his or her duties, the Legislature mandated that he or she be returned to the former position. The Legislature clearly recognized that individuals returning from a disability retirement are in a unique situation, plainly different from all other employees returning to active service. Their separation from employment is unlike the voluntary separation of other civil servants whose seniority is not aggregated. In our view, N.J.S.A. 43:16A-8(2) contemplates that a

restoration to employment return the formerly disabled individual as nearly as possible to the status held at the time he or she was pensioned. The aggregation of seniority complies with the legislative mandate that disabled employees return to their former position upon cessation of their disability.

[In re Allen, 262 N.J. Super. 438, 444 (App. Div. 1993) (emphasis added).]

Although members are eligible for benefits if they can show they left work because of a disability, N.J.A.C., 454 N.J. Super. at 398-402, the Legislature clearly understood the importance of restoring formerly disabled retirees to work when it passed N.J.S.A. 43:16A-8(2), which in pertinent part unambiguously states that

Any beneficiary under the age of [fifty-five] years who has been retired on a disability retirement allowance under this act, on his request shall, or upon the request of the retirement system may, be given a medical examination and he shall submit to any examination by a physician or physicians designated by the medical board once a year for at least a period of five years following his retirement in order to determine whether or not the disability which existed at the time he was retired has vanished or has materially diminished. If the report of the medical board shall show that such beneficiary is able to perform either his former duty or any other available duty in the department which his employer is willing to assign to him, the beneficiary shall report for duty; such a beneficiary shall not suffer any loss of benefits while he awaits his restoration to active service. . . .

[(Emphasis added).]

Assuming he satisfies the requirements of this statute, Cardinale must return to duty. Along those lines, and certainly at the time of the hearing before the ALJ, Cardinale testified that he is no longer disabled, he stopped drinking alcohol, was in recovery, and was on medication. Hence, a strong case can be made that he would inevitably be required to return to duty. See N.J.A.C., 454 N.J. Super. at 400-02 (reiterating that rehabilitation statutes – like N.J.S.A. 43:16A-8(2) – expressly condition reinstatement for disability retirees upon disability rehabilitation, and that under such statutes, "the only obstacle to . . . reemployment is the disability itself"). The obstacle for Cardinale is not his disability, but rather, his irrevocable resignation.

Cardinale's permanent inability to return to duty is fatal. The purpose of N.J.S.A. 43:16A-8(2) is to return the previously disabled retiree to work as if that individual had never suffered a disability or interruption of service. In re Terebetski, 338 N.J. Super. 564, 570 (App. Div. 2001). The statute is not simply an anti-fraud measure. It provides for a system of taxpayer-funded relief by allowing disability benefits but requiring retirees to return to duty upon disability rehabilitation. The Legislature obviously did not devise a disability retirement system that, on the one hand, would grant ordinary disability benefits to PFRS members who could never return to active service, and on the other hand, require that other PFRS members return to duty when

their purported disability vanishes or materially diminishes. That would be absurd. Instead, N.J.S.A. 43:16A-8(2) balances a worker's interest with those of an employer and the public by requiring PFRS workers – upon rehabilitation – to forgo the benefits and return to work. See Klumb, 199 N.J. at 34-35 (reaching the same conclusion by applying a similar rehabilitation statute).

Importantly, a member's irrevocable resignation presents a practical problem that strains the workability of the system. N.J.S.A. 43:16A-8(2) envisions only one circumstance when disability benefits may cease. That situation, which does not apply to members who irrevocably resign from work, arises when the Board grants retirement benefits to a PFRS retiree, that retiree's disability vanishes or materially diminishes, and then that retiree fails to return to duty after the Board orders the retiree to do so. N.J.S.A. 43:16A-8(2) addresses this scenario by stating:

> If the beneficiary fails to submit to any such medical examination or fails to return to duty within [ten] days after being ordered so to do, or within such further time as may be allowed by the [B]oard of [T]rustees for valid reason, as the case may be, the pension shall be discontinued during such default.
>
> [(Emphasis added).]

Thus, the statute authorizes the Board to discontinue disability benefits only under this explicit sequence of events.

A-1997-17T1

Nevertheless, Cardinale argues that his benefits could cease within ten days after he recovers from his disability. N.J.S.A. 43:16A-8(2) does not permit that result. To hold otherwise would require us to re-write the text, which would change not only the meaning of the statute, but also, the policy implications associated with the unique status disabled retirees enjoy. And such a result would contravene the purpose for limiting the only circumstance under which benefits cease.

The Legislative purpose for granting limited authority to stop payment of benefits is such

> that persons on disability retirement who are no longer disabled, i.e., no longer entitled to disability retirement, and who are under the age of fifty-five, be returned to either their prior positions or any available duty that their employers are willing to assign to them. In other words, the employee should be returned to his or her position as if the employee's service was never interrupted and as if the disability retirement had never occurred.
>
> [Terebetski, 338 N.J. Super. at 568-69 (footnote omitted).]

We have explained that "[t]he purpose of this legislation is to return the previously disabled employee to work as if the officer had never been disabled and the officer's service had never been interrupted." Id. at 570.

Cardinale's interpretation of the statute would be repugnant to the entire legislative framework. "Our task is to give that language a fair and practical

interpretation with reference to the purposes of the retirement act." Hillman v. Bd. of Trs., Pub. Emps.' Ret. Sys., 109 N.J. Super. 449, 455 (App. Div. 1970). We have explained that "the Legislature granted the Division discretion to decide the circumstances in which it will order a medical examination of a disability retiree to determine if he or she is fit for employment in any capacity with the former employer." N.J.A.C., 454 N.J. Super. at 416. This is indicative of the legislative goal of returning employees to work whenever possible.

We acknowledge that, "pension statutes are 'remedial in character' and 'should be liberally construed and administered in favor of the persons intended to be benefited thereby.'" Klumb, 199 N.J. at 34 (quoting Geller v. N.J. Dep't of Treasury, Div. of Pensions & Annuity Fund, 53 N.J. 591, 597-98 (1969)). But, "eligibility is not to be liberally permitted." Smith v. Dep't of Treasury, Div. of Pensions & Benefits, 390 N.J. Super. 209, 213 (App. Div. 2007). Moreover, "[i]n spite of liberal construction, an employee has only such rights and benefits as are based upon and within the scope of the provisions of the statute." Francois v. Bd. of Trs., Pub. Emps.' Ret. Sys., 415 N.J. Super. 335, 349 (App. Div. 2010) (alteration in original). "An inappropriate allowance of benefits tends 'to place a greater strain on the financial integrity of the fund in question and its future availability for those

persons who are truly eligible for such benefits.'" Id. at 350 (quoting Smith, 390 N.J. Super. at 215). A PFRS member irrevocably resigning from work is not within the scope of the provisions of N.J.S.A. 43:16A-8(2). In other words, a PFRS member, like Cardinale, who irrevocably resigned from work is not of a class "intended to be benefited" by the statute. Geller, 53 N.J. at 597-98 (applying remedial statutes only in favor of the persons "intended to be benefited").

Thus, from a practical standpoint, the Board cannot statutorily cease paying any approved disability benefits, once they have begun, for an individual who voluntarily resigns from duty to settle disciplinary charges and agrees never to return. Allowing ongoing benefits under these circumstances unquestionably places a strain on the financial integrity of the fund and its future availability for those persons who are truly eligible for such benefits. Doing so would drain, weaken, and overburden the disability retirement system available to PFRS members. Entertaining an ordinary disability retirement application – as the Board recognized – for members who irrevocably resign from service to settle disciplinary charges flowing from illegal use of drugs would violate public policy, contravene the rehabilitation statute, and encourage abuse of the disability retirement system.

17

We therefore conclude that when a PFRS member separates from employment by deliberately and irrevocably resigning from active duty to settle pending disciplinary charges – like Cardinale – that person is ineligible for ordinary disability benefits because he or she can never return to work as contemplated by the unique disability retirement statutory framework.

IV.

We flatly reject Cardinale's contention that the Board failed to turn square corners. "When dealing with the public, 'government must "turn square corners" rather than exploit litigational or bargaining advantages that might otherwise be available to private citizens.'" Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 378 (1992) (quoting W.V. Pangborne & Co. v. N.J. Dep't of Transp., 116 N.J. 543, 561 (1989)). "The government must act fairly and 'with compunction and integrity.'" Id. at 379 (quoting W.V. Pangborne, 116 N.J. at 562). The doctrine is "always subject to the guiding principles of fundamental fairness." Milligan v. Dir., Div. of Taxation, 29 N.J. Tax 381, 399 (Tax 2016). There is no such equitable failure here.

There is no evidence that anyone at the Police Department made any statements on which Cardinale reasonably could have detrimentally relied when negotiating the settlement agreement. The settlement reflected Cardinale's decision to proceed with his application. But the settlement

agreement does not represent – nor could it have – that the Board would process the application. Cardinale understood that by executing the settlement agreement, he would proceed with his application at his "sole risk," and the outcome of the application would not affect the enforceability of the settlement. Instead of permanently resigning, he could have fought the disciplinary action and run the risk of the Police Department terminating him for cause for his illegal use of drugs. But he knowingly chose not to do that.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1997-17T1