**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-6015-17T4

M.R.,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued March 16, 2020 – Decided April 6, 2020

Before Judges Sabatino and Sumners.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. 2-1063717

Samuel Michael Gaylord argued the cause for appellant (Gaylord Popp, LLC, attorneys; Samuel Michael Gaylord, on the brief).

Amy Chung, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant

Attorney General, of counsel; Robert S. Garrison, Deputy Attorney General, on the brief).

PER CURIAM

Appellant M.R. [1] was employed by the Judiciary in the Union County vicinage. He was found to have posted on the Internet numerous disparaging comments about his employer, in violation of Judiciary policy.

Because of his inappropriate conduct, appellant was charged in September 2015 with disciplinary violations. Appellant contends he was suffering from a disability before he received the September 2015 disciplinary action letter. While the disciplinary charges were still pending, appellant filed a disability retirement benefits application in January 2016 with the Public Employment Retirement System ("PERS"), pursuant to N.J.S.A. 43:15A-44. He claimed a psychiatric disability that impaired his ability to perform his job functions.

Thereafter, in July 2016, appellant entered into a settlement with his employer of the disciplinary matter. As part of the settlement, appellant agreed to resign from his position and to not seek reemployment with the Judiciary in the future. The agreement recites that the parties take no position on the impact of the settlement upon appellant's pending disability retirement matter.

---

[1] Although no motion to impound the record was filed, we have chosen to refer to appellant by his initials because of his mental health information in the record.

2

Appellant's disability claim was referred to the Office of Administrative Law as a contested case. A critical threshold issue was whether the appellant's settlement and resignation disallowed the processing of his disability claim.

An Administrative Law Judge ("ALJ") found that the settlement and resignation did not bar appellant's receipt of disability benefits. The PERS Board of Trustees reversed that decision, finding that the applicable statutes do not allow a disability retirement benefit in instances where the employee resigns for reasons other than a disability.

Appellant contends the Board's final agency decision should be overturned because it is inconsistent with the law and arbitrary and capricious. He maintains he is entitled to benefits because his disabled condition arose before the disciplinary charges were filed against him.

The eligibility issues before us are squarely controlled by this court's March 1, 2019 published opinion in Cardinale v. Bd. of Trustees, 458 N.J. Super. 260 (App. Div. 2019). The Cardinale opinion coincidentally was issued after the PERS Board's final agency decision in the present case, but its reasoning validates the Board's determination here.

In Cardinale, this court considered an application for disability benefits under the Police & Firemen's Retirement System ("PFRS"). 458 N.J. Super. at 262. The plaintiff, a former police officer, had voluntarily and irrevocably

3

retired from his position under a settlement agreement after he was suspended for a positive drug test. Id. at 264-65. We held "that when a PFRS member—here a police officer—voluntarily irrevocably resigns from active service, such a separation from employment automatically renders the individual ineligible for ordinary disability benefits." Id. at 263 (emphasis added). We found the plaintiff's claimed disability "irrelevant to our holding that his irrevocable resignation made him ineligible for benefits in the first place." Id. at 268.

In Cardinale, we noted that the applicable PFRS statute, N.J.S.A. 43:16A-8(2), directs that a public employee who retired due to disability, but then recovered sufficiently to "perform either his former duty or any other available duty in the department which his employer is willing to assign to him . . . shall report for duty." (Emphasis added). This statutory requirement provides a way "to return the previously disabled retiree to work as if that individual had never suffered a disability or interruption of service." Cardinale, 458 N.J. at 270; See also In re Terebetski, 338 N.J. Super. 564, 570 (App. Div. 2001) (same). The statutory scheme accordingly strikes a balance between "a worker's interest with those of an employer and the public by requiring PFRS workers—upon rehabilitation—to forgo the benefits and return to work." Cardinale, 458 N.J. Super. at 270.

4

Crucially, we found in Cardinale that N.J.S.A. 43:16A-8(2) dictates that this process—whereby a recipient recovers from his or her disability and returns to work—is the only way the Board can cut off disability benefits. Id. at 271. If, on the other hand, a worker "irrevocably resigned" from his or her former position, that creates:

> a practical problem that strains the workability of the system . . . . the Board cannot statutorily cease paying any approved disability benefits, once they have begun, for an individual who voluntarily resigns from duty to settle disciplinary charges and agrees never to return.
>
> [Id. at 270–73.]

Consequently, we ruled in Cardinale that allowing an employee to seek disability benefits in a situation where he or she had irrevocably retired would prevent the State from ever cutting off disability benefits, even upon recovery, because the employee could never "return" to his or her former employment. Such an outcome "would violate public policy, contravene the rehabilitation statute, and encourage abuse of the disability retirement system." Id. at 273.[2] Accordingly, the plaintiff's irrevocable resignation rendered him ineligible for participation in the disability pension scheme. Ibid.

---

[2] Disability retirement benefits are generally more generous than other retirement benefits. See 50 N.J.R. 646(a) (January 16, 2018) (discussing the necessity of limiting disability pensions only to employees who actually retire due to disability and not some other reason).

5

The pension scheme discussed in Cardinale, covering police and firefighters, is different than the PERS pension scheme at issue in this case, and governed by different statutes. However, a comparison of the statutes demonstrates that Cardinale's logic applies with equal force to the PERS pension scheme. Such comparisons are particularly appropriate because the various pension schemes were designed to be "part of a harmonious whole." In fact, the Supreme Court has analyzed one pension scheme using other pension statutes as reference. See, e.g., Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg'l High Sch. Dist., Monmouth Cty., 199 N.J. 14, 30-33 (2009).

N.J.S.A. 43:16A-8(2), the PFRS statute at issue in Cardinale, requires a recipient of disability benefits to, "upon the request of the retirement system" undergo a medical examination and "[i]f the report of the medical board shall show that such beneficiary is able to perform either his former duty or any other available duty in the department which his employer is willing to assign to him, the beneficiary shall report for duty."

By comparison, N.J.S.A. 43:15A-44, the PERS statute at issue in this appeal, likewise requires an employee receiving disability pension benefits to undergo a medical examination, in this case on an annual basis. It uses identical language to N.J.S.A. 43:16A-8(2), stating "[i]f the report of the medical board shall show that such beneficiary is able to perform either his former duty or other

6

comparable duty which his former employer is willing to assign to him, the beneficiary shall report for duty."

Like the statute in Cardinale, N.J.S.A. 43:15A-44 does not provide an alternative means for the PERS Board to cut off disability pension benefits even where a former employee's disability has ended. The two schemes use identical language regarding a pensioner's return to active service. Both statutes envision a return to work as the sole means available to a Pension Board to cut off disability benefits.

Other state pension schemes and the PERS regulations likewise support this conclusion. For example, in another recent decision concerning the constitutionality of certain regulations for other state pension schemes, we reaffirmed the "longstanding principle that eligibility for disability retirement benefits requires members to make a prima facie showing that they cannot work due to a disability." In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. 386, 394 (App. Div. 2018). Accordingly, "voluntary or involuntary termination of employment, for non-disability reasons, generally deems a member ineligible for disability benefits." Ibid.

The regulatory scheme for the PERS pension fund also supports the Board's decision here. The pertinent PERS regulations instruct that an employee who resigns for any other reason than inability to work due to a disability,

7

including resignation under a settlement agreement, is disqualified from seeking disability retirement:

> Termination of employment, voluntary or involuntary, that was caused by any reason other than the claimed disability disqualifies a member from filing for a disability retirement. A member whose employment ended after his or her employer initiated disciplinary action, or who was the subject of criminal or administrative charges or party to a settlement resulting in resignation or termination, is considered to have separated from service as a result of the employer action, charges, or settlement, and not due to a disability, unless the action, charges, or settlement is shown to be a result of the disability.
>
> [N.J.A.C. 17:2-6.1.]

Although this regulation was introduced and adopted after appellant initially filed his disability pension application, see 49 N.J.R. 2189(a) (July 17, 2017) (proposing this amendment to the PERS regulations), it supports a reading of N.J.S.A. 43:15A-44 consistent with Cardinale. As part of the rulemaking process for the regulation, the PERS Board also noted the regulation reflected the preexisting law:

> Under current law, disability retirement benefits are provided to members who have become "physically or mentally incapacitated for the performance of duty." They are not intended to provide higher retirement benefits to members whose service has been terminated for any other reason. The fact patterns for the member's case, including the reason for the member's voluntary or involuntary separation from service, must demonstrate that the member is totally and permanently

8

> disabled from performing his or her regular or assigned job duties.
>
> [50 N.J.R. 646(a) (January 16, 2018) (emphasis added).]

The denial of appellant's disability application is therefore consistent with the underlying statutes and the public policy on terminating pension benefits.

Appellant argues he is eligible for disability pension benefits because he is only barred by the settlement from reemployment with the Judiciary. He argues he can return to employment in a different (non-judicial) branch of State government, and that there is nothing in the settlement agreement "to say that he couldn't return to his former duties with a different employer." He argues this possible return to service as a PERS member is consistent with N.J.S.A. 43:15A-44.

This argument is contrary to the plain language of the statute, which requires a recovered disability pension recipient to "report to duty." N.J.S.A. 43:15A-44. Our courts have consistently ruled that an employee who has been terminated from his position can no longer "report for duty" to the same or similar position with his or her employer. See Terebetski, 338 N.J. Super. at 568 (emphasis added) ("Plainly, the Legislature intended that persons on disability retirement who are no longer disabled, i.e., no longer entitled to disability retirement . . . be returned to either their prior positions or any

9

available duty that their employers are willing to assign to them.") (emphasis added).[3]

We made this point clear in In re Adoption of N.J.A.C. 17:1-6.4:

> Returning to active service presumes that, at the time the beneficiary left public service, he or she actually had a duty. . . . And so, a beneficiary who previously left public service for some reason other than a disability—like termination for cause—would have no employment or work duty from which to return.
>
> [454 N.J. Super. at 401.]

Appellant's disciplinary settlement bars him from returning to his former position or any other position in the Judiciary. [Pa7-8]. He does not suggest what jobs, if any, outside the Judiciary would be akin to his former "duty" or would require similar responsibilities to his position as a Court Services Supervisor 2. None of the cases cited in his brief support his argument that N.J.S.A. 43:15A-44 envisions allowing an employee to return to a "his former duty[,] just not his former employer." Rather, they support the contrary proposition that an employee who retires due to disability and subsequently

---

[3] See also Cardinale, 458 N.J. Super. at 270 ("The purpose of N.J.S.A. 43:16A-8(2) is to return the previously disabled retiree to work as if that individual had never suffered a disability or interruption of service.") (emphasis added); In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. at 401 ("[D]isability retirees must be returned to the same status and position held at the time of retirement, if available, after proving rehabilitation.") (emphasis added); Matter of Allen, 262 N.J. Super. 438, 444 (App. Div. 1993) ("N.J.S.A. 43:16A–8(2) [the PFRS statute] contemplates that a restoration to employment return the formerly disabled individual as nearly as possible to the status held at the time he or she was pensioned.").

10

recovers must be rehired <u>by his former employer</u> in the same or similar position. That cannot occur here because of the clear prohibition in the settlement agreement.

The theoretical possibility that appellant might someday recover from his disability and be hired in a non-Judiciary position within the vast spectrum of State government does not amount to a "return to duty" with his former Judiciary employer. If we were to adopt that principle, then many meritorious claims for disability retirement could be rejected on a theory that the disabled employee possibly could work in the future for an entirely different public employer within the pension system. In other words, the interpretation appellant advances here could readily cause more harm to the public workforce than good.

All other arguments presented by appellant, to the extent we have not already discussed them, lack sufficient merit to warrant discussion. <u>R</u>. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-6015-17T4