**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1239-19

PATRICK WOODS,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

> Submitted January 25, 2021 – Decided March 19, 2021
>
> Before Judges Sabatino and Currier.
>
> On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. 1143205.
>
> Destribats Campbell, LLC, attorneys for appellant (Raymond C. Staub, on the brief).
>
> Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Jakai T. Jackson, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Patrick Woods was employed by the New Jersey Department of Health and Human Services and assigned to the Trenton Psychiatric Hospital (Hospital). In 2014, he was disciplined for actual or attempted theft of state property or equipment. At that time, he agreed to a settlement with the Hospital under which the Hospital would seek his removal from employment if there were any further issues with his personal conduct or misuse of public property.

In September 2016, a security camera captured appellant removing items from the Hospital's plumbing storeroom and placing them first into a state vehicle and then into his own car. A second incident occurred two weeks later when appellant again removed some items from state property, placing them into his state truck and later his personal vehicle. The misuse of public property for personal use was a violation of the New Jersey Administrative Code, and Department of Human Services policy.

Appellant was charged with disciplinary violations and suspended. Thereafter, the Hospital sought his removal from employment. Appellant requested a hearing, following which a final notice of disciplinary action sustained the charges. Appellant was removed from his employment effective October 27, 2016.

2

After appellant appealed the decision, it was referred to the Office of Administrative Law as a contested case. The parties executed a settlement agreement in January 2019 in which appellant agreed he would resign as a resolution to the administrative charges.[1] He also agreed he would not seek or accept any employment in the future with the Hospital or any of its subsidiaries. Under the agreement, appellant could apply for a disability pension, to be effective January 1, 2017.

During the pendency of the disciplinary appeal, appellant was involved in a motor vehicle accident in November 2017 in which he claimed injuries. In May 2018, he applied for an ordinary disability retirement with the Public Employees' Retirement System (PERS).

On October 17, 2019, defendant Board of Trustees of the Public Employees' Retirement System (Board) issued a final administrative determination, finding appellant was not eligible to file for ordinary disability retirement benefits. Because appellant was separated from his employment due to the administrative charges and his agreement to resign, rather than as the result of a disability, he was not eligible for a disability retirement.

---

[1] Appellant was represented by counsel during the proceedings and the execution of the settlement agreement.

A-1239-19

On appeal, appellant contends (1) there were ambiguities in the settlement agreement which require the court to "examine the surrounding circumstances regarding the formation of [the] agreement[;]" and (2) the Board's decision was capricious and arbitrary because it did not "sufficiently acknowledge [a]ppellant's accident causing his disability[.]"

Appellant bears the burden to demonstrate grounds for reversal. McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002). We will "not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Application of Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008).

When an agency decision satisfies such criteria, we accord substantial deference to the agency's fact-finding and legal conclusions, acknowledging "the agency's 'expertise and superior knowledge of a particular field.'" Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). We will not substitute our judgment for the agency's even though we might have reached a different conclusion. In re Stallworth, 208 N.J. 182, 194 (2011).

A-1239-19

The issue before us, whether appellant is eligible for disability retirement benefits, is governed by our recent decision in <u>Cardinale v. Bd. of Trs.</u>, 458 N.J. Super. 260 (App. Div. 2019).

In <u>Cardinale</u>, this court considered an application for disability benefits under the Police & Firemen's Retirement System ("PFRS"). <u>Id.</u> at 262. The plaintiff, a former police officer, had voluntarily and irrevocably retired from his position under a settlement agreement after he was suspended for a positive drug test. <u>Id.</u> at 264-65. We held "that when a PFRS member—here a police officer—voluntarily irrevocably resigns from active service, such a separation from employment <u>automatically</u> renders the individual ineligible for ordinary disability benefits." <u>Id.</u> at 263 (emphasis added). We found the plaintiff's claimed disability "irrelevant to our holding that his irrevocable resignation made him ineligible for benefits in the first place." <u>Id.</u> at 268.

In <u>Cardinale</u>, we noted that the applicable PFRS statute, N.J.S.A. 43:16A-8(2), directs that a public employee who retired due to disability, but then recovered sufficiently to "perform either his former duty or any other available duty in the department which his employer is willing to assign to him . . . <u>shall report for duty</u>." <u>Id.</u> at 269 (emphasis added). This statutory requirement provides a way "to return the previously disabled retiree to work as if that

individual had never suffered a disability or interruption of service." Id. at 270; see also In re Terebetski, 338 N.J. Super. 564, 570 (App. Div. 2001). The statutory scheme accordingly strikes a balance between "a worker's interest with those of an employer and the public by requiring PFRS workers—upon rehabilitation—to forgo the benefits and return to work." Cardinale, 458 N.J. Super. at 270.

Crucially, we found in Cardinale that N.J.S.A. 43:16A-8(2) dictates that this process—whereby a recipient recovers from his or her disability and returns to work—is the only way the Board can cut off disability benefits. Id. at 271. If, on the other hand, a worker "irrevocably resigned" from his or her former position, that creates:

> [A] practical problem that strains the workability of the system . . . . [T]he Board cannot statutorily cease paying any approved disability benefits, once they have begun, for an individual who voluntarily resigns from duty to settle disciplinary charges and agrees never to return.
>
> [Id. at 270-73.]

Consequently, we ruled in Cardinale that allowing an employee to seek disability benefits in a situation where he or she had irrevocably retired would prevent the State from ever cutting off disability benefits, even upon recovery, because the employee could never "return" to his or her former employment. Id.

at 273. Such an outcome "would violate public policy, contravene the rehabilitation statute, and encourage abuse of the disability retirement system." Ibid. Accordingly, the plaintiff's irrevocable resignation rendered him ineligible for participation in the disability pension scheme. Ibid.

The pension scheme discussed in Cardinale, covering police and firefighters, is different than the PERS pension scheme at issue in this case, and governed by different statutes. However, a comparison of the statutes demonstrates that Cardinale's logic applies with equal force to the PERS pension scheme. Such comparisons are particularly appropriate because the various pension schemes were designed to be "part of a harmonious whole." Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg'l High Sch. Dist., Monmouth Cnty., 199 N.J. 14, 32 (2009). In fact, the Supreme Court has analyzed one pension scheme using other pension statutes as reference. See id. at 30-33.

N.J.S.A. 43:16A-8(2), the PFRS statute at issue in Cardinale, requires a recipient of disability benefits to, "upon the request of the retirement system" undergo a medical examination and "[i]f the report of the medical board shall show that such beneficiary is able to perform either his former duty or any other available duty in the department which his employer is willing to assign to him, the beneficiary shall report for duty . . . ." Cardinale, 458 N.J. Super. at 269-70.

A-1239-19

By comparison, N.J.S.A. 43:15A-44, the PERS statute at issue in this appeal, likewise requires an employee receiving disability pension benefits to undergo a medical examination, in this case on an annual basis. It uses identical language to N.J.S.A. 43:16A-8(2), stating: "[i]f the report of the medical board shall show that such beneficiary is able to perform either his former duty or other comparable duty which his former employer is willing to assign to him, the beneficiary shall report for duty . . . ."

Like the statute in <u>Cardinale</u>, N.J.S.A. 43:15A-44 does not provide an alternative means for the Board to cut off disability pension benefits even where a former employee's disability has ended. The two schemes use identical language regarding a pensioner's return to active service. Both statutes envision a return to work as the sole means available to a pension board to cut off disability benefits.

The regulatory scheme for the PERS pension fund also supports the Board's decision here. The pertinent PERS regulations instruct that an employee who resigns for any other reason than inability to work due to a disability, including resignation under a settlement agreement, is disqualified from seeking disability retirement:

> a) Each disability retirement applicant must prove that his or her retirement is due to a total and permanent

8

disability that renders the applicant physically or mentally incapacitated from performing normal or assigned job duties at the time the member left employment; the disability must be the reason the member left employment.

b) Members who have involuntarily or voluntarily terminated service for any of the reasons listed below will not be permitted to apply for a disability retirement:

. . . .

2. Settlement agreements reached due to pending administrative or criminal charges, unless the underlying charges relate to the disability;

. . . .

[N.J.A.C. 17:1-6.4.]

The denial of appellant's disability application is therefore consistent with the underlying statutes and the public policy on terminating pension benefits.

Here, appellant cannot demonstrate any alleged disability is the reason he left his employment. Moreover, the car accident in which appellant claims to have sustained injuries resulting in his disability occurred almost a year after the imposition of the disciplinary charges and his suspension from his job.

In addition, appellant cannot pursue a disability retirement because he executed a settlement agreement pertaining to the disciplinary charges in which he agreed he could never work for the Hospital again. As we stated in Cardinale,

an irrevocable resignation from employment bars appellant from eligibility for a disability retirement as there is no mechanism for the termination of disability benefits since appellant can never return to his job.

We are satisfied the Board's decision was supported by the credible evidence in the record and was not arbitrary or capricious. Any remaining arguments presented by appellant, not discussed here, lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1239-19