**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1585-19

LYNNE FLAX,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES, POLICE
AND FIREMEN'S RETIREMENT
SYSTEM,

      Respondent-Respondent.

_____

        Argued March 22, 2021 – Decided August 3, 2021

        Before Judges Suter and Smith.

        On appeal from the Board of Trustees of the Police
        and Firemen's Retirement System, Department of
        Treasury, PFRS No. x-xx303.

        Samuel M. Gaylord argued the cause for appellant
        (Gaylord Popp, LLC, attorneys; Samuel M. Gaylord,
        of counsel and on the brief).

        Juliana C. DeAngelis, Deputy Attorney General,
        argued the cause for respondent (Robert S. Garrison,

Jr., Director of Legal Affairs, PFRSNJ, attorney;
Robert S. Garrison, Jr., on the brief).

PER CURIAM

Petitioner Lynne Flax was a Department of Corrections (DOC) corrections officer who applied for disability retirement through the Police and Firemen's Retirement System Board of Trustees (PFRS Board or Board). Before the Board considered her application, the DOC terminated her employment for a having an inappropriate relationship with an inmate. An administrative law judge (ALJ) ordered Flax ineligible for ordinary disability benefits and forfeiture of twenty-eight months of her pension. The Board adopted the ALJ's initial decision. Flax appealed, and we affirm for the reasons set forth below.

## I.

Flax was a corrections officer who began with the DOC in 1989. At the time of her termination, her length of service was twenty-one years and five months. As part of her academy training, Flax was trained not to tell inmates personal information such as her name, details about her family, and her address. As her career progressed, she was eventually promoted to senior corrections officer. Other than two minor disciplinary actions for lateness, once early in her

career and once towards the end of it, she served honorably until the circumstances which brought about her removal.

After many years working at another corrections facility, in 2009 the DOC transferred Flax to Southern State Correctional Facility where she worked in various locations, including the mail room and the receiving gate.

In September 2010, Flax first had contact with an inmate named B.G. as he stopped by her assigned post on his way to and from class. During this time, Flax gradually entered into a personal relationship with him. By November 2010, Flax changed her shift time to avoid interaction with B.G., because her interactions with him caused her to feel uncomfortable. However, she went back to her previous shift in January 2011.

Flax gave B.G. her home telephone number and he began calling her at home. Between November 20, 2010, and June 10, 2011, she had telephone contact 158 times with B.G. and his sister. B.G. used his sister as an intermediary to set up calls between Flax and B.G. Flax knew this contact was a violation of DOC rules, but she and B.G. had developed a "kind of boyfriend-girlfriend" relationship, discussing family matters. When B.G. was released from Southern State to a halfway house, Flax wrote him several letters and visited him twice. Flax even gave B.G. and his sister one hundred and fifty

A-1585-19

dollars to pay for the phone calls between her and B.G. Flax knew her actions created a risk of blackmail, potentially endangering her and her colleagues. B.G. eventually ended their relationship in May 2012.

On April 29, 2011, Flax filed an application for disability retirement. On July 1, 2011, the DOC charged her with conduct unbecoming a public employee, N.J.A.C. 4A: 2-2.3(6), and also with violating various DOC internal rules and regulations. Flax admitted to the relationship, and after a hearing on the charges, the DOC fired her.

After her termination, the Board ordered that Flax forfeit her entire PFRS service and salary credit and also denied her application for ordinary disability on November 16, 2011. The matter went before an ALJ for a hearing.

On October 31, 2014, an ALJ conducted the hearing, but he did not issue an initial decision before retiring. On August 8, 2017, nearly three years later, a new ALJ conducted a supplemental hearing in which Flax testified again so that the ALJ could address credibility.

In her September 19, 2017 initial decision, the ALJ denied the Board's motion to forfeit all of Flax's PFRS service and salary credit. Instead, she ordered that Flax forfeit two years and four months of PFRS service and salary credit towards her pension. After analyzing "whether petitioner's misconduct

warrant[ed] total or partial forfeiture of her pension," using the statutory factors in N.J.S.A. 43:1-3 as well as applicable case law, the ALJ found total forfeiture was not supported by the record.

Next, the ALJ denied Flax's ordinary disability application. She found that Flax "failed to show that her alleged disability is the reason she left her employment." The ALJ concluded Flax could not be eligible for disability benefits because she had "no job to return to if she [was] awarded disability benefits and later recovers," citing Cardinale v. Bd. of Trs., 458 N.J. Super. 260, 263 (App. Div. 2019) and In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. 386, 401 (App. Div. 2018). The Board reviewed the record, made findings, and adopted the ALJ's initial decision on November 6, 2019.

On appeal, Flax makes two substantive arguments. First, she argues that the facts of her case satisfy the statutory criteria of N.J.S.A. 43:16A-8(2), making her eligible for ordinary disability benefits. Second, she argues that the ALJ's twenty-eight-month penalty is "too severe," and that a proper reading of Uricoli v. Board of Trustees, Police and Firemen's Retirement System, 91 N.J. 62 (1982), and N.J.S.A. 43:1-3(d) would have resulted in a seven-month forfeiture, the length of Flax's relationship with B.G.

II.

We turn to our standard of review. "Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). We "may not substitute [our] own judgment for the agency's, even though [we] might have reached a different result." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 483 (2007)).

We cannot reverse an administrative agency determination unless we find that it was arbitrary, capricious, or unreasonable; that it lacked fair support in the evidence; or that the decision violated legislative policies. In re Herrmann, 192 N.J. at 27–28. However, we apply "de novo review to an agency's interpretation of a statute or case law." Russo, 206 N.J. at 27 (citing Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)).

Flax argues first that she meets the statutory requirements of N.J.S.A. 43:16A-8(2) in order to qualify for ordinary disability. She contends the Board improperly denied her application, seeking to distinguish Cardinale. The disputed statute provides that:

> [a]ny beneficiary under the age of [fifty-five]
> years who has been retired on a disability retirement

6

allowance under this act, on his request shall, or upon the request of the retirement system may, be given a medical examination and he shall submit to any examination by a physician or physicians designated by the medical board once a year for at least a period of five years following his retirement in order to determine whether or not the disability which existed at the time he was retired has vanished or has materially diminished. If the report of the medical board shall show that such beneficiary is able to perform either his former duty or any other available duty in the department which his employer is willing to assign to him, the beneficiary shall report for duty; such a beneficiary shall not suffer any loss of benefits while he awaits his restoration to active service. If the beneficiary fails to submit to any such medical examination or fails to return to duty within 10 days after being ordered so to do, or within such further time as may be allowed by the board of trustees for valid reason, as the case may be, the pension shall be discontinued during such default.

[N.J.S.A. 43:16A-8(2).]

"The purpose of [the statute] is to return the previously disabled retiree to work as if that individual had never suffered a disability or interruption of service." Cardinale, 458 N.J. Super. at 270 (citing In re Terebetski, 338 N.J. Super. 564, 570 (App. Div. 2001)).

Under N.J.S.A. 43:16A-8(2), a person cannot collect disability benefits if they irrevocably resign from their position. Id. at 273. In Cardinale, the petitioner voluntarily and irrevocably resigned from his position as a police

officer after admitting to having a substance abuse problem while serving as an active member of the department. Id. at 264–65. The Board denied the petitioner's application for ordinary disability because of his "irrevocable resignation." Id. at 265. On appeal, we found the petitioner's "permanent inability to return to duty . . . fatal." Id. at 270.

We disagree with the notion that Flax's termination for cause somehow distinguishes her case factually from our holding in Cardinale. The petitioner in Cardinale voluntarily resigned from his employer and agreed not to seek rehiring. Similarly, Flax, having been fired for cause, cannot return to work as if she "never suffered a disability or interruption of service." Cardinale, 458 N.J. Super. at 270 (citing Terebetski, 338 N.J. Super. at 570). "The Legislature clearly recognized that individuals returning from a disability retirement are in a unique situation, plainly different from all other employees returning to active service. Their separation from employment is unlike the . . . separation of other civil servants . . . ." In re Allen, 262 N.J. Super. 438, 444 (App. Div. 1993).

Flax argues that even though she was terminated for cause, an award of disability benefits to her would not thwart the statutory scheme. She contends that medical testimony would show her disability commenced prior to the charges were filed against her. This argument misses the point. The record

A-1585-19

shows that Flax was ultimately separated from her DOC employment because she was terminated for cause.  Flax's effort to head off denial of her ordinary disability benefits by racing to file her application before the initiation of disciplinary action against her does not change the manner in which she was separated from her employment.  "[I]t is common sense that disability retirees leave their jobs due to a purported disability."  In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. at 399.  The Board found that Flax did not leave her job due to a disability, which rendered her ineligible under N.J.S.A. 43:16A-8(2) for ordinary disability benefits.  We find no basis in the record to disturb that pivotal finding, one that Flax herself concedes is fatal to this aspect of her appeal.

Finally, Flax contends the Board's forfeiture order is too severe because her twenty-eight-month penalty is four times longer than the relationship she had with B.G.  She argues that, based on the relatively short nature of her relationship with B.G.,  N.J.S.A. 43:1-3(d) and Uricoli call for a lesser penalty.

N.J.S.A. 43:1-3(d) provides that:

> [w]henever a board of trustees determines, pursuant to this section, that a partial forfeiture of earned service credit or earned pension or retirement benefits is warranted, it shall order that benefits be calculated as if the accrual of pension rights terminated as of the date the misconduct first occurred or, if termination as of that date would in light of the nature and extent of the misconduct result in an excessive

9

pension or retirement benefit or in an excessive forfeiture, a date reasonably calculated to impose a forfeiture that reflects the nature and extent of the misconduct and the years of honorable service.

[N.J.S.A. 43:1-3(d).]

In Uricoli, the Court listed eleven factors that "may properly be taken into account in determining the reasonableness of pension forfeiture." Uricoli, 91 N.J. at 78. These factors are also codified in N.J.S.A. 43:1-3(c). Those factors are

> (1) the employee's length of service; (2) the basis for retirement, i.e., age, service, disability, etc.; (3) the extent to which the employee's pension has vested; (4) the duties of the particular employment; (5) the employee's public employment history and record; (6) the employee's other public employment and service; (7) the nature of the misconduct or crime, including the gravity or substantiality of the offense, whether it was a single or multiple offense and whether it was continuing or isolated; (8) the relationship between the misconduct and the employee's public duties; (9) the quality of moral turpitude or the degree of guilt and culpability, including the employee's motives and reasons, personal gain, and the like; (10) the availability and adequacy of other penal sanctions; and (11) other personal circumstances relating to the employee bearing upon the justness of forfeiture.

[Uricoli, 91 N.J. at 78.]

The ALJ's thorough initial decision, adopted in toto by the Board, contained detailed findings. Applying her findings to the Uricoli factors, the

ALJ concluded the record did not support a total forfeiture of Flax's pension. However, the ALJ found that a partial forfeiture was appropriate, and reflected the "gravity of the offense, . . . [Flax's] breach of public trust, the direct relationship of the offense to her job duties, . . . [as well as] the breach of security and safety at the facility . . . created by her offense."

We are satisfied that the Board's final decision was well supported by substantial credible evidence in the record, and that it did not act in an arbitrary, capricious, or unreasonable manner when it denied Flax ordinary disability benefits and ordered partial forfeiture of her PFRS service and salary credit towards her pension. Any other arguments made by petitioner lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION