**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3868-19

GERARDO NODA, JR.,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

        Argued February 9, 2022 – Decided February 24, 2022

        Before Judges Vernoia and Firko.

        On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. x-xx174.

        Samuel M. Gaylord argued the cause for appellant (Gaylord Popp, LLC, attorneys; Samuel M. Gaylord, on the brief).

        Robert S. Garrison, Jr., Director of Legal Affairs, argued the cause for respondent (Robert S. Garrison, Jr., attorney; Robert S. Garrison, Jr., on the brief).

PER CURIAM

In a final decision, the Board of Trustees (the Board) of the Police and Firemen's Retirement System (PFRS) determined petitioner Gerardo Noda, Jr., is ineligible to receive ordinary disability retirement benefits because he irrevocably resigned from his position as a police officer with the Township of Lacey Police Department. Petitioner appeals from the decision, claiming the Board erred because he is permanently disabled and therefore entitled to benefits despite his resignation. Unpersuaded by petitioner's arguments, we affirm.

In 2005, petitioner commenced his employment as a police officer with the Township. On June 2, 2011, petitioner spent the day at a shooting range firing his service weapon. When he concluded the session, he returned to a squad room to disassemble and clean his handgun. Petitioner testified he had difficulty disassembling the weapon, and he explained that to do so, it was necessary to fire the gun while it was unloaded. Believing his gun was unloaded, petitioner fired the weapon in the squad room with other officers present. A bullet discharged from the weapon and struck another officer, causing what turned out to be a minor injury. Petitioner was taken home following the incident.

A-3868-19

In accordance with the police department's policy concerning officer-involved shootings, petitioner was immediately reassigned from street patrol to dispatch duty. Within two days of the incident, he was evaluated at the Institute for Forensic Psychology. He was also questioned by the police department's internal affairs unit as part of its investigation of the shooting incident.

On July 6, 2011, the department served petitioner with a Preliminary Notice of Disciplinary Action stating its intention to remove him from his position on July 28, 2011, based on twelve separate charges arising from the shooting incident. The notice asserted petitioner committed five offenses for conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6); six violations of the Lacey Township Police Department Rules; and one claim there was other sufficient cause for his removal, N.J.A.C. 4A:2-2.3(a)(12), based on petitioner's violation of a termination agreement.[1]

---

[1] In its description of the charges in the Preliminary Notice of Disciplinary Action, the police department refers to the "[o]ther" sufficient cause provision of N.J.A.C. 4A:2-2.3, but mistakenly cites to a clearly inapplicable provision of the regulation—subparagraph "(11)"—which pertains to violations of residency requirements. In our summary of the charges, we cite to the correct portion of the regulation—subparagraph (12)—which provides that an employee is subject to discipline for "[o]ther sufficient cause." N.J.A.C. 4A:2-2.3(a)(12).

3

On July 27, 2011, petitioner submitted a letter finally and irrevocably resigning from his position as a Township police officer.[2]  He also executed a Resignation Agreement stating he had been served with the Preliminary Notice of Disciplinary Action "seeking the termination of his employment as a Lacey Township Police Officer," and that the purpose of the agreement was "to resolve the timing, terms, and procedure of his cessation of [his] employment" and resignation.  He further signed a General Release in "consideration for the Township of Lacey's agreement to convert [his] termination into a resignation." The General Release explained petitioner reserved his right to apply to PFRS for a disability pension, but none of the documents executed by petitioner related to his resignation and the termination of his employment state that his disability was the reason for his resignation.

Petitioner filed an application for accidental disability retirement benefits on July 27, 2011.  The Board denied the application in a May 15, 2012 letter. Petitioner appealed from the denial, the matter was referred to the Office of Administrative Law as a contested case, and an administrative law judge (ALJ) was assigned to conduct a hearing.

---

[2]  Petitioner resigned effective July 31, 2011.

At the outset of the hearing, petitioner stipulated that he no longer sought accidental disability retirement benefits and instead requested an award of ordinary disability retirement benefits. During the two-day hearing, petitioner testified on his own behalf, and he presented the testimony of Dr. Daniel B. Gollin, who was qualified as expert in general psychiatry. PFRS presented the testimony of Dr. Daniel B. LoPreto as an expert in clinical psychology. The experts offered differing opinions on whether petitioner suffered from a psychological or psychiatric condition resulting in a disability. Various reports and records from petitioner's treatment were also admitted in evidence.

The ALJ was persuaded by Dr. Gollin's testimony that petitioner suffered from a disability, and she determined petitioner proved he is disabled from his position as a police officer. However, she also found petitioner ineligible to receive ordinary disability retirement benefits. "Applying" our holding in Cardinale v. Board of Trustees, Police & Firemen's Retirement System, 458 N.J. Super. 260 (App. Div. 2019), the ALJ found petitioner "final[ly] and irrevocabl[y]" resigned as part of a settlement agreement that terminated disciplinary charges against him, and she concluded petitioner is ineligible to

receive ordinary disability retirement benefits because he is unable to return to work, as required under N.J.S.A. 43:16A-8(2), if his disability status changes.[3]

In its final decision, the Board adopted the ALJ's determination petitioner is not eligible for ordinary disability retirement benefits because he "resigned from [his] position as the result of a signed settlement agreement stipulating [his] irrevocable resignation."[4] The Board explained petitioner is ineligible to receive benefits because if it is later determined he is no longer disabled, he could not be directed to return to work as required under N.J.S.A. 43:16A-8(2). The Board explained that "[g]ranting a disability retirement under [those] circumstances would be in contravention of the statutory scheme, and place [it] in the position of potentially paying a disability pension[,] which [it] has no

---

[3] In her decision, the ALJ also referred to N.J.A.C. 17:1-6.4(b), which provides in part that PFRS members "will not be permitted to apply for a disability retirement" if they voluntarily or involuntary terminate their service pursuant to a "settlement agreement[] reached due to pending administrative or criminal charges, unless the underlying charges relate to the disability." N.J.A.C. 17:1-6.4(b)(2). The regulation became effective on June 20, 2016, 48 N.J.R. 1306(a) (June 20, 2016), almost five years after petitioner's resignation. Neither the ALJ nor the Board relied on the regulation as a basis for their decisions, and we therefore do not consider it as a basis supporting the Board's final decision.

[4] The Board inaccurately found the ALJ determined petitioner did not prove he is disabled. It is unnecessary to consider or address that erroneous finding because the Board's determination petitioner is ineligible for the benefits is not based on a determination petitioner is not disabled.

ability or mechanism to terminate if the member is no longer totally and permanently disabled." This appeal followed.

Our review of an agency determination is limited. Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (citing Russo v. Bd. of Tr., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). We "may not substitute [our] own judgment for the agency's, even though [we] might have reached a different result." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 483 (2007)).

"An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Tr., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo, 206 N.J. at 27). Our review is limited to the following three inquires:

> (1) whether the agency's actions violate[] express or implied legislative policies, that is, did the agency follow the law;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

7

[Allstars Auto Grp., 234 N.J. at 157 (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

"The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006). We review de novo "an agency's interpretation of a statute or case law." Russo, 206 N.J. at 27.

Petitioner argues he is entitled to ordinary disability retirement benefits because he tendered his irrevocable letter of resignation due to his disability and not as a result of the disciplinary charges. He also contends the ALJ and the Board erred in their application of our decision in Cardinale. We are not persuaded.

In Cardinale, the petitioner, a former police officer, voluntarily and irrevocably resigned from his position under a settlement agreement after he was suspended for a positive drug test. 458 N.J. Super. at 264-65. We held "that when a PFRS member—here a police officer—voluntarily irrevocably resigns from active service, such a separation from employment automatically renders the individual ineligible for ordinary disability benefits." Id. at 263 (emphasis added). We found the petitioner's claimed disability "irrelevant to our holding

that his irrevocable resignation made him ineligible for benefits in the first place." Id. at 268.

We explained the applicable PFRS statute, N.J.S.A. 43:16A-8(2), directs that a public employee who retires due to disability but then recovers sufficiently to "perform either his former duty or any other available duty in the department which his employer is willing to assign to him[,] . . . shall report for duty." Id. at 269 (emphasis added). This statutory requirement provides a way "to return the previously disabled retiree to work as if that individual had never suffered a disability or interruption of service," id. at 270; see also In re Terebetski, 338 N.J. Super. 564, 570 (App. Div. 2001), and strikes a balance between "a worker's interest with those of an employer and the public by requiring PFRS workers— upon rehabilitation—to forgo the benefits and return to work." Cardinale, 458 N.J. Super. at 270. We concluded the statute's purpose is undermined if the Board "cannot statutorily cease paying any approved disability benefits, once they have begun, for an individual who voluntarily resigns from duty to settle disciplinary charges and agrees never to return." Id. at 270-73.

Our holding in Cardinale applies with syllogistic precision here. It is undisputed petitioner irrevocably resigned from his position as a police officer.

That fact alone "automatically" rendered him ineligible for disability retirement benefits. Id. at 263.

Petitioner's claim he resigned due to his disability does not require a different result for two reasons. First, as we explained in Cardinale, an irrevocable resignation from employment alone renders an individual ineligible for retirement benefits. See id. at 269 (finding "the consequence of" an "irrevocable resignation is determinative" of an applicant's eligibility for disability benefits). Second, even assuming a resignation based on a disability renders petitioner eligible for the benefits, he did not sustain his burden of proving his resignation was based on his disability, and the evidence, including the documents he signed, establish it was not. See In re Arenas, 385 N.J. Super. at 443-44. Additionally, we accept the ALJ's finding petitioner "resigned from his position as part of a settlement agreement ending disciplinary charges filed against him as a result of the June 2, 2011 incident" because it is supported by substantial credible evidence in the record. See In re Taylor, 158 N.J. 644, 657 (1999) (explaining a reviewing court "must uphold" an agency's findings that are supported by "sufficient credible evidence in the record").

At oral argument, petitioner asserted that the law applicable when petitioner applied for benefits in 2011, long prior to our decision in Cardinale,

allowed a PFRS member to receive ordinary disability retirement benefits following an irrevocable resignation. We reject this argument because it is not supported by a citation to any supporting statute or decisional precedent. The argument is also undermined by our decision in In re Adoption of N.J.A.C. 17:1-6.4, where we addressed a challenge to the validity of N.J.A.C. 17:1-6.4, which was adopted in 2016 and embodies what we characterized as "the separation from service rule." 454 N.J. Super. 386, 397 (App. Div. 2018).

In pertinent part, the regulation bars a PFRS member "from applying for a disability retirement if they voluntarily terminate service," id. at 398, based on a "[s]ettlement agreement[] reached due to pending administrative or criminal charges, unless the underlying charges relate to the disability,"[5] ibid. (quoting N.J.A.C. 17:1-6.4). In N.J.A.C. 17:1-6.4, we expressly rejected a claim, like the one asserted by petitioner here, that the separation from service rule embodied in the regulation eliminated benefits to which members had previously been entitled. Id. at 404. We explained "the separation from service rule takes nothing away from members. Members who leave public service for reasons

_____

[5] Petitioner neither claimed nor produced any evidence the disciplinary charges against him related to his disability, and the evidence established they were not. The disciplinary charges were founded solely on petitioner's discharge of his weapon on June 2, 2011, that resulted in an injury to another officer.

unrelated to a disability are not entitled to disability retirement benefits in the first instance." Ibid. We concluded the enactment of the regulation was consistent with the statutory scheme, and therefore "[n]othing [was] taken away" by its application. Ibid. In other words, contrary to petitioner's claim he was entitled to disability retirement benefits at the time he resigned, our decision in N.J.A.C. 17:1-6.4 establishes he was never entitled to the benefits under the applicable statutes in the first instance.

Any remaining arguments made on petitioner's behalf that we have not expressly addressed are without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12