**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0075-21
A-1880-21

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

SEAN LAVIN,

      Defendant-Appellant.

_____

SEAN LAVIN,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

Submitted October 24, 2023 – Decided December 14, 2023

Before Judges Gooden Brown and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 14-12-1408, and the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. xx9587.

Fusco & Macaluso, attorneys for appellant (Amie E. DiCola, on the briefs).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent State of New Jersey (Laura Sunyak, Assistant Prosecutor, of counsel and on the brief).

Nels J. Lauritzen, Deputy Director, Legal Affairs, attorney for respondent, Police and Firemen's Retirement System of New Jersey (Juliana C. DeAngelis, Legal Counsel, on the brief).

PER CURIAM

Sean Lavin, a former sergeant at the Mercer County Sheriff's Office who was charged with official misconduct and tampering with public records and admitted into the Pre-Trial Intervention Program (PTI) on the condition that he resign from the Sheriff's Office and forego future employment in Mercer County, appeals from: (1) the July 24, 2021, Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing; and (2) the January 12, 2022, final agency decision of the Board of Trustees (Board) of the Police and Firemen's Retirement System (PFRS), finding him ineligible to apply for accidental disability retirement (ADR) benefits. The appeals were

2

calendared back-to-back. Because they share common facts, we now consolidate them for the purpose of issuing a single opinion and affirm in both appeals.

I.

The facts are largely undisputed. On December 6, 2013, Lavin and other members of the Sheriff's Office were assisting with security at an event at the Sun National Bank Center in Trenton. Three women, two of whom were visibly intoxicated, were denied entry due to their condition and became unruly. As a result, they were arrested for disorderly conduct. While one woman was handcuffed with her hands behind her back, Lavin allegedly pepper-sprayed her in the face. After the incident, Lavin allegedly instructed two subordinate officers at the scene to have their reports match his. Lavin's report falsely stated that the woman was not handcuffed and was still struggling with the officers when the pepper spray was deployed.

On December 12, 2013, complaint-summonses were issued charging Lavin with two counts of official misconduct in connection with the incident. Shortly thereafter, Lavin's employer filed a Preliminary Notice of Disciplinary Action, seeking Lavin's removal from office, effective December 13, 2013. On

January 7, 2014, a Final Notice of Disciplinary Action was issued, which indefinitely suspended Lavin pending the disposition of the criminal charges.

On December 10, 2014, a Mercer County Grand Jury returned a four-count indictment charging Lavin with three counts of second-degree official misconduct, N.J.S.A. 2C:30-2(a) (counts one to three), and one count of third-degree tampering with public records, N.J.S.A. 2C:28-7(a)(1) (count four). Count one related to Lavin's alleged improper use of pepper spray on the arrestee, count two related to the allegation that Lavin attempted to have two subordinate officers file false reports in connection with the incident, and counts three and four related to the allegation that Lavin himself filed false reports.

On October 5, 2015, Lavin was admitted into the PTI Program without a guilty plea for a period of eighteen months, subject to the following conditions:

> [Lavin] shall resign from his position as a Mercer County Sheriff's Officer effective October 2, 2015[,] and shall not seek future employment with Mercer County.

Effective October 2, 2015, Lavin tendered his resignation in accordance with the condition of his PTI enrollment. Upon Lavin's successful completion of the PTI program, the indictment was ultimately dismissed.

Lavin applied for ADR benefits, effective October 1, 2015, claiming several major injuries to his knees that occurred while on active duty. On

December 21, 2015, the Board denied "Lavin's request to file for [ADR] benefits" because Lavin "left employment as a result of a disciplinary termination, and not due to a disabling condition." According to the Board, because "Lavin was required to resign from employment as part of the terms of PTI and not seek future employment with Mercer County," Lavin "cannot comply with the terms of . . . N.J.S.A. 43:16A-8, should the alleged disabling condition, be found, to vanish or become materially diminished."[1]

Lavin filed an administrative appeal of the denial, and the Board transferred the matter to the Office of Administrative Law (OAL) for a hearing as a contested case. The matter was assigned to an administrative law judge (ALJ) who heard testimony from both parties "on the sole issue of eligibility to apply for [ADR] benefits." At the hearing, "the parties agreed that the material facts were not in dispute and the case could be handled as cross-motions for summary decision."

On November 10, 2021, the ALJ issued an initial decision affirming the Board's decision. In support, the ALJ analyzed N.J.S.A. 43:16A-8, directing

---

[1] The Board also voted to forfeit the final three years of Lavin's service credit as "dishonorable service" because his "misconduct demonstrated a high degree of moral turpitude and there was a direct relationship between his misconduct and his duties as a Sheriff's Officer." That determination is not challenged on appeal.

that a public employee who retires due to a disability, but then recovers sufficiently "to perform either his former duty or any other available duty in the department which his employer is willing to assign to him . . . shall report for duty." N.J.S.A. 43:16A-8(2). Relying on case law interpreting N.J.S.A. 43:16A-8(2), particularly Cardinale v. Board of Trustees, Police & Firemen's Retirement System, 458 N.J. Super. 260 (App. Div. 2019), the ALJ concluded that "[a] public employee whose permanent separation from service is caused by his or her own misconduct and has not ceased working due to a disability, is . . . not within the class of beneficiaries the disability retirement statutes are intended to benefit." Applying the reasoning in Cardinale and other cases, the ALJ determined that Lavin was "automatically prohibited from filing for a disability retirement" given the undisputed facts surrounding his resignation. Lavin filed exceptions and, on January 12, 2022, the Board adopted the ALJ's decision in its entirety.

While the pension proceedings were ongoing, Lavin filed a petition for PCR, seeking to vacate his entry into PTI based on "newly discovered evidence." Lavin claimed that the State withheld Internal Affairs (IA) and disciplinary records of potential witnesses in violation of Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972). In support, Lavin's

attorney certified that during the prosecution of the criminal charges, the Mercer County Prosecutor's Office (MCPO) and Mercer County repeatedly refused Lavin's requests for IA and disciplinary records of Mercer County Sheriff's officers.

According to counsel,

> [t]he reason for these repeated requests, and the insistence that these records be provided, was the knowledge that several of the officers involved in the [IA] investigation against . . . Lavin had previous allegations, and/or sustained charges, of untruthfulness. These records were absolutely relevant to the credibility of those officers, should they testify against . . . Lavin, and absolutely relevant to any defense to the charges . . . Lavin may have offered at the time of trial.

Counsel averred that because of "the repeated refusal . . . and representations . . . that those files did not contain what [Lavin] believed them to [contain,] . . . Lavin ultimately entered into PTI with the hope of pursuing an [ADR] pension."

Lavin specifically asserted that the failure to provide the following three documents violated his due process rights: (1) a Mercer County Sheriff's Office IA Complaint Form dated March 21, 2016, against Lieutenant Scott Schoelkopf, who was Lavin's superior officer; (2) a March 2012 employee evaluation form of Officer Ricardo Hernandez, one of the two officers involved in the subject

7

incident; and (3) a <u>Garrity</u>[2] warning form issued to Hernandez dated December 12, 2013.

In the first document, dated nearly six months after Lavin was admitted into PTI, an officer lodged a complaint against Schoelkopf, stating:

> Schoelkopf intentionally falsified my evaluation sheet in my personnel file by insinuating I had a racial issue during the year of 2012. This was done by attaching the statement "one issue this year regarding a racial issue that was addressed by U/S Ellison," and doing so [four] days after my signature was already affixed on the document. I believe this was not only done deceivingly, but maliciously as well, without any documentation to support his false statement!

In the second document – Hernandez' employee evaluation – Schoelkopf noted that Hernandez allegedly "made up lies about a supervisor."[3] The third document – a <u>Garrity</u> warning – was issued to Hernandez in connection with an investigation into "official misconduct [and] false reports," presumably the subject incident.

---

[2] <u>Garrity v. New Jersey</u>, 385 U.S. 493, 500 (1967) (holding that the constitutional protection against coerced statements prohibited the use of statements obtained from law enforcement officers in subsequent criminal proceedings when the statements were obtained under threat of removal from office).

[3] The document provided in the record is barely legible. Accordingly, we rely on the trial court's description of the document.

A-0075-21

Following oral argument, the motion judge issued a written opinion dated July 24, 2021, denying Lavin's petition. In his decision, the judge first posited that whether "someone who has not been convicted of a crime as a result of completing PTI" was entitled to PCR appeared to be an issue of first impression. The judge reasoned that if Lavin suffered a due process violation, "[p]rinciples of fundamental fairness may . . . require[] the court to allow [Lavin] to avail himself of the protections of a [PCR] application" even though he was never convicted. Here, however, the judge found that no such violation occurred.

Comparing the "nature and quality" of the evidence in Brady and Giglio with the evidence presented by Lavin, the judge found that Lavin's evidence did not "possess the certitude or force of proofs found in Brady [or] Giglio" to have "a clear capacity to have affected the outcome." First, the judge found "[t]he fact that . . . Hernandez was administered Garrity warnings ha[d] no material relevance to . . . Lavin's case." The judge pointed out that Lavin's suggestion otherwise was "akin to suggesting that Miranda warnings being given to a suspect in and of themselves somehow affect[ed] the suspect's credibility."

Next, the judge characterized the "probative value, if any, of the internal affairs documents" as "significantly diminished because the arguments surrounding their materiality [were] based on supposition, conjecture and

innuendo." The judge explained "[t]here [was] nothing to suggest that any of the officers involved confessed to having pepper sprayed the young lady or that they were promised anything if they testified against . . . Lavin." Further, the judge found that the evidence presented in the documents would not have been admissible at trial for impeachment purposes under N.J.R.E. 608. Additionally, according to the judge, "[t]o the extent the [S]tate represented to defense counsel there was no Brady or Giglio material in the internal affairs reports, the court's assessment of the reports support[ed] the [S]tate's opinion."

The judge noted,

> If defense counsel understandably wanted to know for herself what was contained in the [IA] reports, she could have engaged in some type of compulsory process such as a motion to compel documents for the court to conduct an in-camera review of the records. The record is devoid of any such motion practice. Defense counsel candidly stated she accepted the assistant prosecutor's representations because "she's an officer of the court[."] That decision may have been the courteous thing to do but not the wisest. It certainly weakens the argument that the [IA] reports are newly discovered evidence because any probative and relevant information contained in the reports could have been discovered through the aforementioned compulsory process.

These appeals followed.

In the PCR appeal, No. A-0075-21, Lavin raises a single point for our consideration:

> THIS HONORABLE COURT SHOULD REVERSE THE DENIAL OF SGT. SEAN LAVIN'S MOTION FOR [PCR] AS THE [MOTION JUDGE] SHOULD HAVE FOUND THAT SGT. LAVIN WAS ENTITLED TO VACATE HIS ENTRY INTO THE [PTI] PROGRAM AS A RESULT OF NEWLY DISCOVERED EVIDENCE RISING TO THE LEVEL OF BRADY AND GIGLIO MATERIAL.

In the pension appeal, No. A-1880-21, Lavin raises the following point for our consideration:

> THE FINAL ADMINISTRATIVE ACTION ISSUED BY THE BOARD OF TRUSTEES OF THE [PFRS], UPHOLDING THE INITIAL DECISION OF THE . . . [ALJ] WAS ARBITRARY, UNREASONABLE, CAPRICIOUS, AND IT IS NOT SUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE IN THE RECORD. APPELLANT'S ULTIMATE RESIGNATION AND HIS AGREEMENT TO NOT PURSUE FUTURE EMPLOYMENT WITH ONLY THE COUNTY OF MERCER DOES NOT DICTATE A DETERMINATION THAT HE IS INELIGIBLE FOR AN ACCIDENTAL DISABILITY RETIREMENT.

II.

PCR APPEAL

"Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus." State v. Afanador, 151 N.J. 41, 49 (1997) (citing State v.

11

Preciose, 129 N.J. 451, 459 (1992)). "It is a safeguard to ensure that a defendant was not unjustly convicted." Ibid. (citing State v. McQuaid, 147 N.J. 464, 482 (1997)). "'Post-conviction relief is a defendant's last opportunity to raise a constitutional challenge to the fairness and reliability of a' state criminal proceeding." State v. Hess, 207 N.J. 123, 144 (2011) (quoting State v. Feaster, 184 N.J. 235, 249 (2005)).

Pursuant to Rule 3:22-1, "[a]ny person convicted of a crime may, pursuant to this rule, file with the criminal division manager's office of the county in which the conviction took place a petition for post-conviction relief captioned in the action in which the conviction was entered."

> Rule 3:22-2 provides four grounds[4] for post-conviction relief: (a) substantial denial in the conviction proceedings of a defendant's state or federal constitutional rights; (b) a sentencing court's lack of jurisdiction; (c) an unlawful sentence; and (d) any habeas corpus, common-law, or statutory grounds for a collateral attack. A petitioner must establish the right to such relief by a preponderance of the credible evidence.
>
> [Preciose, 129 N.J. at 459 (internal quotation marks omitted).]

---

4  Rule 3:22-2 was amended, effective September 1, 2018, to add a fifth ground for post-conviction relief: "a claim of ineffective assistance of counsel based on trial counsel's failure to file a direct appeal of the judgment of conviction and sentence upon defendant's timely request."

To be sure, post-conviction relief requires the entry of a conviction. See Rule 3:22-1. A conviction is "established through a trial based on proof beyond a reasonable doubt, or through the entry of a guilty plea." In re Commitment of J.M.B., 197 N.J. 563, 577 (2009). Lavin was neither convicted nor sentenced. Rather, all charges against him were dismissed following his successful completion of the PTI Program.

"PTI is a 'diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior.'" State v. Roseman, 221 N.J. 611, 621 (2015) (quoting State v. Nwobu, 139 N.J. 236, 240 (1995)). The PTI Program is governed by "procedures and guidelines established by Rule 3:28 and N.J.S.A. 2C:43-12." Ibid.

Under N.J.S.A. 2C:43-12(g), PTI "shall be available to a defendant irrespective of whether the defendant contests his guilt of the charge or charges against him" but "shall be available" to certain defendants "only upon entering a plea of guilty." See also R. 3:28-5(b) (providing that PTI enrollment "shall not be conditioned" upon entry of a guilty plea but such shall be required for certain defendants). "For any such defendant, following the plea of guilty the plea shall be held in an inactive status pending termination of supervisory

13

treatment pursuant to subsection d. or e. of N.J.S.[A. ]2C:43-13.  Upon successful completion of the program of supervisory treatment the charges shall be dismissed."  N.J.S.A. 2C:43-12(g)(3).

Lavin was admitted into the PTI Program without the requirement that he enter a guilty plea.  Upon his successful completion of the program, the charges were dismissed.  As a result, there was no judgment of conviction entered or sentence imposed.  Because no judgment of conviction was entered, Lavin's claims are not cognizable under the PCR rules.  The fact that Lavin agreed to certain PTI conditions does not transform his admission into the program into a conviction or sentence.  Moreover, Lavin identifies no authority or procedural mechanism that would allow him to lodge such a challenge years after the charges against him have been dismissed.[5]

Even if we considered Lavin's contentions, we would reject them substantially for the reasons articulated by the motion judge.  Lavin asserts the

---

[5]  In Rodriguez v. State, 437 S.W.3d 450, 452 (Tenn. 2014), the Tennessee Supreme Court reached a similar conclusion in holding that "a guilty plea expunged after successful completion of judicial diversion is not a conviction subject to collateral review under the Post-Conviction Procedure Act." Although out-of-state judicial decisions are not binding on this court, State v. Warriner, 322 N.J. Super. 401, 407 (App. Div. 1999), we may "acknowledg[e] the persuasiveness of a reasoned decision on analogous facts." Sauter v. Colts Neck Volunteer Fire Co. No. 2, 451 N.J. Super. 581, 600 (App. Div. 2017).

14

three documents demonstrate "clear violations" of <u>Brady</u> and <u>Giglio</u> that warrant granting PCR.  In support, Lavin relies on Attorney General Law Enforcement Directive No. 2019-6, requiring county policies to ensure compliance with <u>Brady</u> and <u>Giglio</u>, as well as a report prepared by a "police practices expert" retained by Lavin, discrediting the IA investigation into the subject incident and disparaging the credibility of several Mercer County Sheriff's officers.  Both documents were considered by the motion judge.

In <u>Brady</u>, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates [constitutional principles of] due process . . . ."  373 U.S. at 87.  "[T]o determine whether a <u>Brady</u> violation has occurred: (1) the evidence at issue must be favorable to the accused, either as exculpatory or impeachment evidence; (2) the State must have suppressed the evidence, either purposely or inadvertently; and (3) the evidence must be material to the defendant's case."  <u>State v. Brown</u>, 236 N.J. 497, 518 (2019).

In <u>Giglio</u>, the United States Supreme Court extended <u>Brady</u>'s scope to include material evidence that would bear upon the credibility of the State's witnesses.  405 U.S. at 153-54.  The Court cautioned, however, "[w]e do not . . . automatically require a new trial whenever 'a combing of the

15

prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict . . . ."  Id. at 154 (quoting United States v. Keogh, 391 F.2d 138, 148 (2d Cir. 1968)).  Rule 3:13-3(b)(1) codifies the standards set forth in Brady and Giglio in our State.

"[E]vidence is material if there is a 'reasonable probability' that timely production of the withheld evidence would have led to a different result at trial." Brown, 236 N.J. at 520 (citing United States v. Bagley, 473 U.S. 667, 682 (1985)).  "In deciding materiality, 'we examine the circumstances under which the nondisclosure arose' and '[t]he significance of a nondisclosure in the context of the entire record.'"  Id. at 518-19 (alteration in original) (quoting State v. Marshall, 123 N.J. 1, 199-200 (1991)).  To determine the effect of the withheld evidence "in the context of the entire record," a reviewing court considers "the strength of the State's case, the timing of disclosure of the withheld evidence, the relevance of the suppressed evidence, and the withheld evidence's admissibility." Id. at 519 (internal quotation marks and citations omitted).

We agree with the motion judge that none of the documents meet the standards enunciated in Brady or Giglio.  The documents would not even be considered Brady material under Attorney General Law Enforcement Directive No. 2019-6, which defines potential Brady/Giglio material for investigative

16

employees as information relating to a "sustained finding" where "a preponderance of the evidence shows an officer violated any law, regulation, directive, guideline policy or procedure." Even then, the Directive states that "this does not necessarily mean the information will be disclosed." Clearly, none of the documents meet the Directive's criteria.

The crux of Lavin's argument is that the three documents, which Lavin believes contain "exculpatory and impeachable evidence," suggest that "there is substantially more [exculpatory and impeachment evidence] if and when the full and complete [IA] files are provided." However, as our Supreme Court directed in State v. Higgs,

> a defendant who seeks discovery of information from an [IA] file must first file a motion with the trial court requesting an in camera review of that file. The motion shall identify the specific category of information the defendant seeks and the relevance of that information to the defendant's case. A general allegation that the defendant is in search of information relevant to a law enforcement officer's credibility for impeachment purposes would be insufficient to obtain review of the file. The procedure should not be a fishing expedition into the disciplinary records of law enforcement.
>
> An allegation that the information, if present, is relevant to the case is necessary for a defendant to obtain the trial court's in camera review of the file. . . . [I]n order for a trial court to grant a motion to conduct an in camera review of an [IA] file, the defendant must point to a specific category or type of evidence and

17

assert that the evidence, if present in the file, has a relevant nexus to an issue in the case.

[253 N.J. 333, 358-59 (2023) (citations omitted).]

As the motion judge pointed out, "[t]he record is devoid of any such motion practice."

## III.

## PENSION APPEAL

Our review of an administrative agency's determination is limited. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). We will sustain an agency's final decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Mount v. Bd. of Trs., Police & Firemen's Ret. Sys., 233 N.J. 402, 418 (2018) (quoting Russo, 206 N.J. at 27). In determining whether an agency's decision is arbitrary, capricious, or unreasonable, we examine: (1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether in applying the law to the facts, the "agency clearly erred in reaching [its] conclusion." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 482-83 (2007)). "The burden of proving that an agency action is arbitrary, capricious, or unreasonable is on the challenger." Parsells v. Bd. of Educ. of

18

<u>Borough of Somerville</u>, 472 N.J. Super. 369, 376 (App. Div. 2022), <u>aff'd as modified sub nom.</u> <u>Parsells v. Bd. of Educ. of Borough of Somerville, Somerset Cnty.</u>, 254 N.J. 152 (2023).

We generally accord "substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing." <u>Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys.</u>, 192 N.J. 189, 196 (2007). "Such deference has been specifically extended to state agencies that administer pension statutes[,]" because "a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise." <u>Piatt v. Police & Firemen's Ret. Sys.</u>, 443 N.J. Super. 80, 99 (App. Div. 2015) (quoting <u>In re Election Law Enf't Comm'n Advisory Op. No. 01-2008</u>, 201 N.J. 254, 262 (2010)). Nevertheless, we are not bound by an agency's legal determinations, which we review de novo. <u>Mount</u>, 233 N.J. at 418-19.

This appeal is governed by N.J.S.A. 43:16A-8(2), which provides in pertinent part that:

> Any beneficiary under the age of [fifty-five] years who has been retired on a disability retirement allowance under this act, on his request shall, or upon the request of the retirement system may, be given a medical examination and he shall submit to any examination by a physician or physicians designated by

the medical board once a year for at least a period of five years following his retirement in order to determine whether or not the disability which existed at the time he was retired has vanished or has materially diminished. If the report of the medical board shall show that such beneficiary is able to perform either his former duty or any other available duty in the department which his employer is willing to assign to him, the beneficiary shall report for duty . . . .

Lavin argues the Board acted in an arbitrary and capricious manner by analogizing his case to Cardinale, 458 N.J. Super. at 260, where we interpreted N.J.S.A. 43:16A-8(2) in a way that is detrimental to Lavin's position. In Cardinale, we considered "whether, as a matter of law, a police officer is ineligible for ordinary disability benefits[6] as a member of the [PFRS] if the officer separates from service by irrevocably resigning from employment to resolve pending drug-related disciplinary charges." Id. at 262. There, Cardinale had voluntarily and irrevocably resigned from his position as a police officer under a settlement agreement to resolve a disciplinary action stemming from his suspension for a positive drug test. Id. at 264-65. To answer the question presented, "we recogniz[ed] that N.J.S.A. 43:16A-8(2) requires disability retirees to return to duty once their disability has 'vanished or has materially

---

[6] "Disability retirement applicants generally apply for ordinary or accidental disability retirement benefits." In re Adoption of N.J.A.C. 17:1-6.4, 17:1-7.5 & 17:1-7.10, 454 N.J. Super. 386, 397 (App. Div. 2018).

diminished'" and acknowledged that "permanently resigning from employment makes returning to duty impossible." Id. at 262-63 (quoting N.J.S.A. 43:16A-8(2)).

We held that

> when a PFRS member — here a police officer — voluntarily irrevocably resigns from active service, such a separation from employment automatically renders the individual ineligible for ordinary disability benefits. Generally, for individuals whose disability has vanished or materially diminished, benefits cease when the retiree refuses to return to duty after the Board has so ordered. In this sense, disability retirees are unique. But here, Cardinale can never return to duty solely because of his final resignation, rather than his refusal to do so upon disability rehabilitation. Under the governing legislative framework, the inability to return to duty — due solely to an irrevocable resignation — prevents the Board from statutorily terminating any granted benefits, a result which would contravene important public policy underlying disability retirement benefits.
>
> [Id. at 263.]

In so holding, we rejected Cardinale's claim that the PFRS Board "acted arbitrarily by refusing to process his application seeking ordinary disability benefits," ibid., and deemed Cardinale's purported disability "irrelevant to our holding that his irrevocable resignation made him ineligible for benefits in the first place," id. at 268. We noted "[t]he obstacle for Cardinale is not his

21

disability, but rather, his irrevocable resignation" because "[t]he purpose of N.J.S.A. 43:16A-8(2) is to return the previously disabled retiree to work as if that individual had never suffered a disability or interruption of service." Id. at 270. See also In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. at 394-95 ("[V]oluntary or involuntary termination of employment, for non-disability reasons, generally deems a member ineligible for disability benefits. Such a holding comports with the existing overall framework of the enabling, eligibility, and rehabilitation statutes, and policies applicable to the various State public retirement systems."). We reasoned that "N.J.S.A. 43:16A-8(2) balances a worker's interest with those of an employer and the public by requiring PFRS workers — upon rehabilitation — to forgo the benefits and return to work." Cardinale, 458 N.J. Super. at 270. See also In re Terebetski, 338 N.J. Super. 564, 570 (App. Div. 2001) ("Pursuant to the plain language of N.J.S.A. 43:16A-8, once a person is determined no longer disabled, the appointing authority is required to return the officer to active duty . . . .").

Critically, in Cardinale, we determined that N.J.S.A. 43:16A-8(2) dictates that this process—whereby a recipient recovers from his or her disability and returns to work—is the only way the Board can cut off disability benefits. 458 N.J. Super. at 271. Consequently, we ruled in Cardinale that allowing an

employee to seek disability benefits in a situation where he or she had irrevocably resigned would prevent the State from ever cutting off disability benefits, even upon recovery, because the employee could never "return" to his or her former employment. Id. at 273. Such an outcome "would violate public policy, contravene the rehabilitation statute, and encourage abuse of the disability retirement system." Ibid. Accordingly, the Cardinale's irrevocable resignation rendered him ineligible for participation in the disability pension scheme. Ibid.

Contrary to Lavin's contention, Cardinale is controlling. It is now settled law that "an irrevocable resignation from employment, in and of itself, renders a member ineligible for ordinary or accidental retirement benefits." Rooth v. Bd. of Trs., Pub. Emps.' Ret. Sys., 472 N.J. Super. 357, 367 (App. Div. 2022) (citing In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. at 404). Lavin claims the decision to prevent him from receiving disability benefits because of "the criminal and administrative charges is premature" because "no determination has ever been made as to whether [he] is in fact permanently and totally disabled due to a[n] on-duty injury." However, the fact that Lavin is forever barred from future employment with Mercer County renders him

ineligible for disability benefits as a matter of law and renders his claimed disability "irrelevant." Cardinale, 458 N.J. Super. at 268.

We also reject Lavin's claim that confining the future employment ban to Mercer County makes a difference because he could potentially "return to duty as a police officer" anywhere other than Mercer County. N.J.S.A. 43:16A-8 requires that an employee who recovers from a disabling condition must be able to be rehired by his former employer in the same or similar position. See In re Terebetski, 338 N.J. Super. at 568-69 ("Plainly, the Legislature intended that persons on disability retirement who are no longer disabled . . . be returned to either their prior positions or any available duty that their employers are willing to assign to them.").

We acknowledge that "pension statutes should be liberally construed and administered in favor of the persons intended to be benefited." Francois v. Bd. of Trs. Pub. Emps.' Ret. Sys., 415 N.J. Super. 335, 349 (App. Div. 2010) (internal quotation marks omitted) (quoting Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg'l High Sch. Dist., 199 N.J. 14, 34 (2009)). "However, [i]n spite of liberal construction, an employee has only such rights and benefits as are based upon and within the scope of the provisions of the statute." Ibid. (alteration in original) (internal quotation marks omitted)

24

(quoting Casale v. Pension Comm'n of Emps.' Ret. Sys. of Newark, 78 N.J. Super. 38, 40 (Law Div. 1963)). "An inappropriate allowance of benefits tends 'to place a greater strain on the financial integrity of the fund in question and its future availability for those persons who are truly eligible for such benefits.'" Id. at 350 (quoting Smith v. State, Dept. of Treasury , 390 N.J. Super. 209, 215 (App. Div. 2007)).

A PFRS member, like Lavin, who resigned from work and irrevocably agreed to forego future employment as a condition of his admission into the PTI program to resolve criminal charges "is not within the scope of the provisions of N.J.S.A. 43:16A-8(2)" and "is not of a class 'intended to be benefited' by the statute." Cardinale, 458 N.J. Super. at 272 (quoting Geller v. Dep't of Treasury, 53 N.J. 591, 597-98 (1969)). Allowing Lavin to obtain benefits under these circumstances "would drain, weaken, and overburden the disability retirement system available to PFRS members." Id. at 273.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0075-21