**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3881-22

ANTHONY KING,

    Plaintiff-Respondent,

v.

BARNEGAT TOWNSHIP,

    Defendant-Appellant.

_____

Argued October 9, 2024 – Decided January 29, 2025

Before Judges Mayer, Rose and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. C-000012-23.

Christopher J. Dasti argued the cause for appellant (Dasti & Staiger, PC, attorneys; Christopher J. Dasti, of counsel and on the briefs; Jeffrey D. Cheney, on the briefs).

Steven J. Kossup (Law Office of Steven J. Kossup, PC) argued the cause for respondent.

PER CURIAM

In this contract dispute, defendant Barnegat Township appeals from two July 25, 2023 orders of the Chancery Division: (1) denying its motion for summary judgment; (2) granting plaintiff Anthony King's cross-motion for summary judgment; (3) declaring the Township breached its contract with King; and (4) revising the parties' contract to remove provisions relating to King's resignation from employment with the Township. We reverse.

I.

King is employed as a police officer by the Township, which brought disciplinary charges against him. Although the factual bases for the charges are not in the record, it is undisputed the Township alleged King is unfit for duty and sought his termination. As of November 2020, the charges remained pending.

On November 5, 2020, after six months of negotiations between counsel for both parties, King and the Township executed a separation agreement and release (the Agreement) agreeing to settle all matters arising from and related to King's employment. The Agreement provides that "[t]he Township has determined that King is in fact medically disabled based upon the medical examination . . . dated December 2, 2019. King concurs in the Township's determination. Accordingly, the Township will file for an [i]nvoluntary

[o]rdinary [d]isability [r]etirement for [King], effective September 1, 2020, or as soon thereafter as possible."

The parties agreed the Township would place King on leave pending a decision from the Division of Pensions and Benefits (Division) on his retirement application. Pursuant to the Agreement, King's active regular duties would cease the day the Township filed the application. Once King exhausted his accrued leave, he would be placed on unpaid leave pending resolution of the application. In addition, the Agreement provides:

> Concurrent with the execution of this Agreement, King shall submit to [the] Chief of Police . . . a valid and binding letter of resignation pending retirement from his employment with the Township. This letter will state that King is resigning from his employment with the Township for medical reasons.

The Agreement provides that "[t]he Township will take all necessary steps to effectuate the involuntary ordinary disability retirement application, including, but not limited to, providing all medical information and taking all Governing Body action necessary." It also states:

> The [p]arties understand, accept, and acknowledge that the Division . . . is an autonomous agency and only it can make decisions regarding [Police and Firemen's Retirement System (PFRS)] pension applications, specifically pension disability applications. The [p]arties understand, accept and agree that neither they, their attorneys, [n]or anyone

3

other than the Pension Board, can make determinations regarding PFRS pension application matters.

. . . .

Notwithstanding the binding and irrevocable nature of King's letter of resignation, the letter will be held in escrow while and until King's involuntary disability pension application is decided upon by the . . . Division . . . and King has exhausted all rights of appeal flowing from the disability application.

. . . .

It is expressly understood that King's resignation from his position is herein acknowledged by the Township as one made in good standing. This resignation is final and irrevocable regardless of the disposition of the involuntary disability pension application and upon King exhausting all rights of appeal, if any.

In exchange, the Township agreed to dismiss all disciplinary charges filed or contemplated alleging King is unfit for duty. The Township acknowledged that other than the issue of King's fitness for duty, no allegation of misconduct was pending, except those arising from his medical disability. The Agreement also provides that

King and the Township acknowledge and agree that if King is granted an [o]rdinary [d]isability [retirement] by [the Division], and in the unlikely event his medical condition improves thereafter to allow a return to employment, that King will be reinstated to his position and then will resign his position within

4

thirty . . . days of his reinstatement, without any compensation due to him from the Township during this thirty[-]day period.

Finally, the Agreement contains a severability clause stating:

If any of the provisions, terms, clauses, or waivers or release of claims or rights contained in this Agreement are declared illegal, unenforceable, or ineffective in a legal forum, such provisions, terms, clauses, or waivers or release of claims or rights shall be deemed severable, such that all other provisions, terms, clauses, and waivers and releases of claims and rights contained in this Agreement shall remain valid and binding on all parties.

On November 17, 2020, the Township filed an ordinary disability retirement benefit application on behalf of King.

On August 10, 2021, the Board of Trustees (Board) of PFRS issued a letter finding King's final and irrevocable resignation, as required by the Agreement, made him ineligible to apply for ordinary disability retirement benefits based on N.J.S.A. 43:16A-8(2). That statute provides that if during the five-year period after a disability retirement is granted a medical examination reveals that the beneficiary's disability has "vanished or materially diminished" and the beneficiary can perform the duties of his prior position or any other available position, the beneficiary must report for duty. "If a disability beneficiary is

restored to active service, his retirement allowance . . . shall be canceled until he again retires." N.J.S.A. 43:16A-8(4).

The Board noted the Agreement provides that in the event King is granted a disability retirement and his disability vanishes or materially diminishes within five years, he will be reinstated, but then must resign within thirty days without compensation. The Board determined the resignation-upon-return provision in the Agreement defeats the legislative intent of N.J.S.A. 43:16A-8(2) and (4) because King could not meaningfully return to work as required by the statute were he to be rehabilitated from his disability. In addition, the Board found that because the Agreement prevents King from returning to active service, it would have no mechanism to cancel his retirement allowance were he to be rehabilitated.

King appealed the Board's decision, requesting a hearing before the Office of Administrative Law (OAL). The Board agreed the matter was a contested case warranting a hearing. Subsequently, at King's request, the OAL placed his appeal on the inactive list.

The Township thereafter denied King's request to modify the Agreement to remove the provisions stating his resignation was irrevocable and that he would resign after thirty days in the event he was returned to work because he

was rehabilitated from his disability. The Township refused his request because King's resignation and his promise never to return to work as a police officer were material terms of the Agreement and eliminating those terms would deprive the Township of the benefit of its bargain with King.

King thereafter filed a complaint in the Law Division alleging: (1) the Township breached its promise to take all necessary steps to effectuate the disability retirement application by not agreeing to modify the Agreement; (2) the Township denied King his contractual right to have the Division decide whether he is qualified for an ordinary disability retirement; (3) the severability clause of the Agreement requires the Township to recognize that provisions declared illegal by the Board are stricken from the Agreement; and (4) the Township breached the implied covenant of good faith and fair dealing in the Agreement. King sought a judgment that the Township breached the Agreement, damages, and an order striking from the Agreement all provisions stating his resignation is irrevocable and requiring him to resign in the event he is returned to duty because his disability vanished or materially diminished.

The complaint was transferred to the Chancery Division and the parties cross-moved for summary judgment. On July 25, 2023, the motion court issued a written decision denying the Township's motion for summary judgment and

A-3881-22

granting in part plaintiff's cross-motion for summary judgment. The court found that the Board

> is a legal forum and that said legal forum declared the provisions declaring [King's] resignation irrevocable to be unenforceable in connection with the . . . agreement's provision that [d]efendant would "take all necessary steps to effectuate [King's] involuntary ordinary disability retirement application" and the requirements of N.J.S.A. 43:16A-8(2). The provisions undoubtedly cannot coexist.

Thus, the court concluded, "severance of the subject provisions is necessary and summary judgment on the issue is appropriate."

A July 25, 2023 order denied the Township's motion for summary judgment. A second July 25, 2023 order dismissed the Township's motion for summary judgment, granted King's cross-motion for summary judgment in part, declared the Township breached the Agreement by not agreeing to remove from the Agreement the provisions concerning the irrevocability of King's resignation, and reformed the Agreement by severing from it the provisions concerning the irrevocability of King's resignation and his promise to resign if returned to work after recovering from his disability.[1]

---

[1] The motion court also denied summary judgment without prejudice with respect to King's claims for monetary damages. On August 14, 2023, the court entered an order memorializing plaintiff's withdrawal of his claim for damages. That order also clarified a paragraph of one of the July 25, 2023 orders.

This appeal followed. The Township argues the motion court erred by: (1) finding the Township breached its contractual obligation to take all necessary steps to effectuate King's retirement application by not agreeing to sever from the Agreement the provisions relating to the permanent nature of his retirement; (2) finding the Board is a legal forum with the authority to declare provisions of the Agreement unenforceable and that the Board declared provisions of the Agreement unenforceable; (3) revising the contract to permit King to return to work in the event he recovers from his disability, thereby depriving the Township of the benefit of its bargain; and (4) deciding King's claims prior to his exhaustion of administrative and appellate remedies with respect to his ordinary disability pension application.[2]

## II.

We review a grant of summary judgment de novo, applying the same standard as the motion court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers

---

[2] On October 16, 2023, the Board granted King's request to reconsider its August 10, 2021 decision in light of the motion court's orders. The Board found that "the outcome of the litigation between . . . King and the Township . . . will necessarily impact . . . King's eligibility to apply for [o]rdinary [d]isability retirement benefits; as such, the Board determined the matter will be held in abeyance pending final disposition" of the claims raised in this matter.

A-3881-22

to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

"The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). "If there is no genuine issue of material fact, we must then 'decide whether the [motion] court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).

A settlement of a legal claim between parties is a contract like any other contract, Nolan v. Lee Ho, 120 N.J. 465, 472 (1990), which "may be freely

entered into and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div. 1983) (quoting Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App. Div. 1974)).

In interpreting a contract, we look at the language used by the parties and construe that language consistent with its plain meaning, considering the overall purpose and meaning of the contract. See In re Cnty. of Atlantic, 230 N.J. 237, 254 (2017); JPC Merger Sub LLC v. Tricon Enters., Inc., 474 N.J. Super. 145, 160-61 (App. Div. 2022). "Because '[t]he plain language of the contract is the cornerstone of the interpretive inquiry[,] "when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result."'" JPC Merger Sub LLC, 474 N.J. Super. at 161 (alterations in original) (quoting Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020)). "We cannot 'rewrite a contract for the parties better than or different from the one they wrote for themselves.'" GMAC Mortgage, LLC v. Willoughby, 230 N.J. 172, 186 (2017) (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)).

We review de novo the motion court's interpretation of a contract. Serico v. Rothberg, 234 N.J. 168, 178 (2018); JPC Merger Sub LLC, 474 N.J. Super.

at 159.  We pay "no special deference to the [motion] court's interpretation and look at the contract with fresh eyes."  JPC Merger Sub LLC, 474 N.J. Super. at 160 (quoting Kieffer, 205 N.J. at 223).  We do not defer to the motion court's legal analysis.  RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

To prevail on a claim for breach of contract, a plaintiff must prove: (1) "the parties entered into a contract containing certain terms"; (2) "plaintiff[] did what the contract required [plaintiff] to do"; (3) "defendants did not do what the contract required them to do"; and (4) "defendants' breach, or failure to do what the contract required, caused a loss to the plaintiff[]."  Goldfarb v. Solimine, 245 N.J. 326, 338-39 (2021) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016)).

The motion court's interpretation of the Agreement must be considered in light of the statutory and regulatory provisions governing eligibility for ordinary disability retirement benefits.  N.J.S.A. 43:16A-6(1) provides that a member of PFRS with sufficient credible service

> may be retired on an ordinary disability retirement allowance; provided, that the medical board, after a medical examination of such member, shall certify that such member is mentally or physically incapacitated for the performance of his usual duty and of any other available duty in the department which his employer is

willing to assign to him and that such incapacity is likely to be permanent and to such an extent that he should be retired.

It is well established "that eligibility for disability retirement benefits requires members to make a prima facie showing that they cannot work due to a disability." In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. 386, 394 (App. Div. 2018). In addition, the member is required to prove that his asserted disability is "the reason the member left employment." Id. at 397 (quoting N.J.A.C. 17:1-6.4(a)). A member is barred from applying for disability retirement benefits if he resigned pursuant to a "[s]ettlement agreement[] reached due to pending administrative . . . charges, unless the underlying charges relate to the disability" on which the application is based. N.J.A.C. 17:1-6.4(b)(2). The fact that King resigned pursuant to a settlement agreement reached due to pending administrative charges is not the basis on which the Board in its initial decision found him ineligible to apply for a disability retirement. To the contrary, in the Agreement the parties acknowledge that the pending disciplinary charges against King were related to his disability, which falls within the exception established in N.J.A.C. 17:1-6.4(b)(2).

Instead, the Board's initial decision was based on a statutory provision that requires a PFRS member granted an ordinary disability retirement be available

to return to work if, within five years of retirement, the disability on which the retirement was based vanishes or is materially diminished.  N.J.S.A. 43:16A-8(2) provides:

> Any beneficiary under the age of [fifty-five] who has been retired on a disability retirement allowance under this act . . . upon the request of the retirement system may   . . . be given a medical examination and he shall submit to any examination by a physician or physicians designated by the medical board once a year for at least a period of five years following his retirement in order to determine whether or not the disability which existed at the time he was retired has vanished or has materially diminished.  If the report of the medical board shall show that such beneficiary is able to perform either his former duty or any other available duty in the department which his employer is willing to assign to him, the beneficiary shall report for duty . . . .  If the beneficiary fails to submit to any such medical examination or fails to return to duty within [ten] days after being ordered so to do . . . the pension shall be discontinued during such default.

As we recognized, "[t]he rehabilitation statutes presume that . . . the only obstacle to a disability retiree's reemployment is the disability itself."  In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. at 401.  Thus, "disability retirees must be returned to the same status and position held at the time of retirement, if available, after . . . rehabilitation."  Ibid. (citing Klumb v. Bd. of Educ., 199 N.J. 14, 32 (2009) and In re Allen, 262 N.J. Super. 438, 444 (App. Div. 1993)).

14

At the time the parties executed the Agreement, we had held that an employee who irrevocably resigns to resolve pending disciplinary charges is not eligible to apply for ordinary disability retirement benefits because that employee cannot fulfill the return to duty requirement in N.J.S.A. 43:16A-8(2). See Cardinale v. Bd. of Trs., Police and Firemen's Ret. Sys., 458 N.J. Super. 260 (App. Div. 2019). In that matter, a municipality filed disciplinary charges against a police officer alleging illegal drug use. Id. at 263-64. Shortly after the charges were filed, the officer applied for ordinary disability retirement benefits. Id. at 264.

Thereafter, the municipality held a hearing on the disciplinary charges that resulted in the officer's removal from employment. Ibid. The officer subsequently filed an appeal with the Civil Service Commission. Ibid. While the appeal was pending, the municipality and the officer settled the disciplinary matter through execution of a settlement agreement. Ibid. In the agreement, the officer agreed to irrevocably resign from the police department in exchange for the withdraw of the disciplinary charges. Id. at 264-65. Also in the agreement, the officer acknowledged he would proceed with an ordinary disability retirement application "at his 'sole risk,' and that the outcome of the application would not affect his resignation." Id. at 265.

After an administrative hearing, the Board refused to process the officer's application, explaining "that the only obstacle to his reemployment was not the purported disability, but rather, his irrevocable resignation. The Board therefore concluded – assuming [the officer] was disabled but later became rehabilitated – that it would have no statutory authority to stop paying benefits." Ibid.

Before this court, the officer argued the Board's refusal to process his application deprived him the opportunity to show he suffered from a disability qualifying him for retirement benefits. Id. at 267. We affirmed. Id. at 263. As we explained:

> We hold that when a PFRS member – here a police officer – voluntarily irrevocably resigns from active service, such a separation from employment automatically renders the individual ineligible for ordinary disability benefits. Generally, for individuals whose disability has vanished or materially diminished, benefits cease when the retiree refuses to return to duty after the Board has so ordered. In this sense, disability retirees are unique. But here, [the officer] can never return to duty solely because of his final resignation, rather than his refusal to do so upon disability rehabilitation. Under the governing legislative framework, the inability to return to duty – due solely to an irrevocable resignation – prevents the Board from statutorily terminating any granted benefits, a result which would contravene important public policy underlying disability retirement benefits.
>
> [Ibid.]

We noted that the statutory obligation to return to duty "is not simply an anti-fraud measure. It provides for a system of taxpayer-funded relief by allowing disability benefits but requiring retirees to return to duty upon disability rehabilitation." Id. at 270. We reasoned that

> [t]he Legislature obviously did not devise a disability retirement system that, one the one hand, would grant ordinary disability benefits to PFRS members who could never return to active service, and on the other hand, require that other PFRS members return to duty when their purported disability vanishes or materially diminishes.
>
> [Ibid.]

See also Rooth v. Bd. of Trs., Police and Firemen's Ret. Sys., 472 N.J. Super. 357, 367 (App. Div. 2022) (noting that even where an employee's separation from work is related to her alleged disability, her "irrevocable resignation, alone, made her ineligible for disability benefits" because "the irrevocable resignation letter renders her return to work . . . unattainable.").

Here, at the time the parties executed the Agreement it was established that King's irrevocable resignation rendered him ineligible to apply for ordinary disability retirement benefits. The parties are charged with knowledge of the law at the time they entered their contract. Rodriguez v. Raymours Furniture Co., 436 N.J. Super. 305, 322 (App. Div. 2014). Indeed, the record suggests

that when counsel negotiated the Agreement they were aware of the legal precedents concerning the preclusive effect of an employee's resignation on eligibility for retirement benefits. The thirty-day resignation-upon-return-to-work provision of the Agreement appears to be an attempt to circumvent N.J.S.A. 43:16A-8(4) and avoid application of our holding in Cardinale.

It is evident that the Agreement places on King the risk the Board would find that the provision requiring him to resign within thirty days of a return to work does not satisfy N.J.S.A. 43:16A-8(4) and precludes him from applying for ordinary disability retirement benefits. As the Agreement states, King's "resignation is final and irrevocable regardless of the disposition of the involuntary disability pension application . . . ."

We disagree with the motion court's conclusion that the Township breached the Agreement by refusing to revise its terms to permit King to return to work in the event he is rehabilitated from his disability. The motion court's decision is predicated on its finding that the Board "declared illegal, unenforceable, or ineffective" the provisions of the Agreement relating to King's irrevocable resignation. According to the motion court, the Board's invalidation of those provisions of the Agreement triggered the Township's contractual

obligation to take the "necessary" step of revising the agreement to remove the irrevocable nature of King's resignation.

Our review of the record reveals that the Board did not find the provisions of the Agreement concerning King's resignation to be unenforceable. To the contrary, the Board did not accept King's retirement application precisely because those provisions are enforceable and preclude King from fulfilling the return to work requirement of N.J.S.A. 43:16A-8(4).

Because no provision of the Agreement was declared unenforceable by the Board, the severance provision of the contract was not triggered. The motion court, therefore, erred when it found the Township breached an obligation under the severance clause to remove from the Agreement the provisions relating to the permanent nature of King's resignation.[3]

In addition, the motion court erred when it concluded that the Township breached the Agreement by not taking the "necessary step" of revising the contract to permit King to return to work in the event he is rehabilitated from

---

[3] We note King filed his complaint while the matter was pending before the OAL for a contested hearing and that the matter is now before the Board awaiting a final decision. Thus, King did not fulfill his obligation under the Agreement to "exhaust[] all rights of appeal flowing from the disability application." We do not address whether the Board is "a legal forum" within the meaning of the severance provision of the Agreement or whether the Board has the statutory authority to declare provisions of a contract unenforceable.

his disability. The Agreement's unequivocal terms establish that in exchange for his irrevocable resignation in good standing, King secured the dismissal of the disciplinary charges pending against him and the Township's agreement to "take all necessary steps to effectuate his involuntary disability retirement application including, but not limited to, providing all medical information and taking all Governing Body action necessary . . . ."

It was error to find that one such "necessary step" was that the Township revise the Agreement to eliminate the benefit of its bargain – the irrevocable resignation of a person the Township believed unfit to serve as a police officer – to permit him to return as a police officer. Such a broad interpretation of the necessary steps provision vitiates the core exchange of promises embodied in the Agreement. In addition, the motion court's interpretation of the Agreement shifts the burden of the Board's decision not to accept King's application to the Township, when the Agreement unequivocally provides that King's resignation shall be irrevocable regardless of whether the Board approved his retirement application. Nothing in the Agreement reflects an obligation on the Township's part to forfeit what it gained from the contract to ensure that King is awarded ordinary disability retirement benefits.

A-3881-22

In light of our conclusions, it was error for the motion court to revise the terms of the contract. "For a court to grant reformation there must be 'clear and convincing proof' that the contract in its reformed, and not original, form is the one that the contracting parties understood and meant it to be." St. Pius X House of Retreats v. Camden Diocese, 88 N.J. 571, 580-81 (1982) (quoting Central State Bank v. Hudik-Ross Co., 164 N.J. Super. 317, 323 (App. Div. 1978)). As we discussed, the Agreement in its original form does not require the Township to permit King to return to work as a police officer should he be rehabilitated from his disability.

The July 25, 2023 orders are reversed. The matter is remanded for entry of an order granting summary judgment to the Township and dismissing King's complaint.[4]

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] The provision of the August 14, 2023 order clarifying a paragraph of one of the July 25, 2023 orders is also vacated.